PER CURIAM
The Texas Citizens Participation Act (TCPA) provides for the expedited dismissal of certain legal actions based on, relating to, or responding to a defendant's exercise of the right of free speech. But the TCPA does not apply to actions based on certain commercial speech. Texas courts of appeals are divided on the proper construction of the commercial-speech exemption. Here, the court of appeals held that the exemption applies, so the defendant could not seek expedited dismissal under the TCPA. We disagree, reverse the court of appeals' judgment, and remand the case to that court for further proceedings.
Petitioners Timothy Castleman and Castleman Consulting, LLC (collectively, Castleman) run an online platform that serves as a middleman between consumers and various product suppliers. Customers place orders through Castleman's website, then Castleman orders the items from the suppliers and ships them to the customers. Respondents Kevin O'Connor and Internet Money Limited, d/b/a The Offline Assistant (collectively, O'Connor) provide "virtual assistant" services to businesses. Castleman hired O'Connor to receive and fulfill the customer orders placed through Castleman's website and provided O'Connor with written instructions on how to fill those orders. Castleman later accused O'Connor of failing to follow the instructions and over-ordering products. Castleman demanded compensation for his lost profits (estimated around $8,000) from O'Connor.
When O'Connor refused to pay, Castleman published statements about the dispute on various online platforms including a personal blog, YouTube, and social media. Castleman's posts included statements that O'Connor did not fulfill his obligations to Castleman, had an 80-85% error rate, was unable to follow instructions, "practically stole" from Castleman, and provided terrible service. For instance, Castleman stated, "No one from [O'Connor's] company ... reviewed any of the orders to ensure they were being done correctly despite his assurances they do quality control and project management on all jobs." Castleman also stated that by posting these reviews, his "goal [was] to protect other business owners from losing $8k or having to take a company to court like [he's] doing."
O'Connor sent Castleman a cease-and-desist letter demanding that Castleman erase and retract all statements about O'Connor and his company, publish apologies that O'Connor found "satisfactory," and pay O'Connor $315,000. When Castleman refused, O'Connor sued Castleman for defamation. Castleman moved to dismiss the suit under the TCPA, asserting that *686 the action relates to and is in response to Castleman's exercise of his right to free speech. In response, O'Connor argued that the TCPA does not apply because the action is not based on Castleman's exercise of his free-speech right, and even if it were, the commercial-speech exemption applies. Alternatively, O'Connor argued that the court could not dismiss the suit under the TCPA because he had established a prima facie case of the elements necessary to recover for defamation. The trial court denied Castleman's motion, expressly agreeing with O'Connor's arguments, including the applicability of the commercial-speech exemption. The court of appeals affirmed, agreeing that the commercial-speech exemption applies. 545 S.W.3d 682, 2017 WL 1449224, at *4 (Tex. App.-Amarillo, Apr. 19, 2017). Because of that holding, the court of appeals did not address Castleman's challenges to the trial court's other findings and conclusions in O'Connor's favor.
Castleman contends that O'Connor's claims are based on Castleman's exercise of his right of free speech, which the TCPA defines as "a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE § 27.001(3). A "[m]atter of public concern" includes an issue related to "a good, product, or service in the marketplace." Id. § 27.001(7)(E). The TCPA and its expedited-dismissal procedure do not apply, however, to some forms of commercial speech. Specifically, the TCPA
does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer.
Id. § 27.010(b).
The Texas courts of appeals are divided on the proper interpretation and application of this exemption. Most have held that the exemption applies only if the plaintiff's action is based on statements or conduct directed to the defendant's actual or potential buyers or customers, as opposed to the plaintiff's buyers or customers or to the "public at large."[1] Many have reached this conclusion by relying on a California Supreme Court decision addressing a similar statute. See Newspaper Holdings , 416 S.W.3d at 88-89 (relying on Simpson Strong-Tie Co., Inc. v. Gore , 49 Cal.4th 12, 109 Cal.Rptr.3d 329, 230 P.3d 1117, 1129 (2010) (adopting four-element test and holding that the California statute's commercial-speech exemption applies only if the speaker's intended audience includes actual or potential buyers or customers of the speaker's goods or services) ).[2]
*687 Others, including the court of appeals in this case, have refused to follow the California Court's decision because it addressed a commercial-speech exemption that differs in both language and structure from the Texas exemption.[3] The court of appeals affirmed the trial court's denial of Castleman's TCPA-dismissal motion because Castleman's statements on which O'Connor bases his claims arise out of "the sale or lease of goods [or] services" or a "commercial transaction in which the intended audience [was] an actual or potential buyer or customer." TEX. CIV. PRAC. & REM. CODE § 27.010(b). According to the court of appeals, the exemption does not require that the statements arise out of Castleman's sale of good or services or a transaction in which the intended audience was Castleman's actual or potential buyer or customer.
Considering the differences between the California and Texas statutes, we agree with the court of appeals' refusal to rely on California's construction of its commercial-speech exemption. But we conclude that the Texas exemption, when construed within its own statutory context, carries the same meaning. See *688 Jose Carreras, M.D., P.A. v. Marroquin , 339 S.W.3d 68, 71 (Tex. 2011) ("Statutory interpretation begins by examining the text of the statute.") (citing McIntyre v. Ramirez , 109 S.W.3d 741, 745 (Tex. 2003) ); Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson , 209 S.W.3d 644, 651-52 (Tex. 2006) ("[W]hen a statute's words are unambiguous and yield a single inescapable interpretation, the judge's inquiry is at an end.") (citing McIntyre , 109 S.W.3d at 745 ).
The TCPA's commercial-speech exemption is no model of clarity, but we conclude that it is not ambiguous, at least on the issue presented here. We must analyze statutory language in its context, considering the specific sections at issue as well as the statute as a whole. CHCA Woman's Hosp. v. Lidji , 403 S.W.3d 228, 232 (Tex. 2013). While "it is not for courts to undertake to make laws 'better' by reading language into them," we must make logical inferences when necessary "to effect clear legislative intent or avoid an absurd or nonsensical result that the Legislature could not have intended." Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n , 518 S.W.3d 318, 338 (Tex. 2017).
Focusing on the text and context of the TCPA's commercial-speech exemption, we construe the exemption to apply when (1) the defendant was primarily engaged in the business of selling or leasing goods, (2) the defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services, (3) the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides, and (4) the intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides.
The exemption expressly provides that the TCPA "does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services," but only "if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction." TEX. CIV. PRAC. & REM. CODE § 27.010(b). While these clauses do not expressly state that the statement or conduct must arise out of "the defendant's" sale or lease of goods or services, or that the defendant be acting in its capacity as a seller or lessor of those goods or services, we believe that is the only reasonable and logical construction of the exemption when considered within its statutory context.
The exemption, of course, is wholly unnecessary unless the TCPA applies. And the TCPA only applies when the claim is based on the defendant's exercise of the right of free speech, association, or to petition. See id. §§ 27.001(1) - (4) (defining "[c]ommunication" and the "[e]xercise of" the rights of association, free speech, and to petition); .003(a) (requiring dismissal if the claim is "based on, relates to, or is in response to" the defendant's exercise of those rights). In context, then, the only reasonable construction of the exemption's reference to "the statement or conduct" is as a reference back to "the defendant's" statement or conduct "on which the claim is based."
Similarly, the exemption refers to "the sale or lease of goods" without expressly referring to whose sale or lease of goods. Read in context, however, the phrase necessarily relates back to the immediately preceding requirement that the defendant be "primarily engaged in the business of selling or leasing goods or services." Id. § 27.010(b). That is, "the sale or lease of goods or services" must refer to the defendant's sale or lease of goods or services. If the exemption applies whenever a seller of goods or services makes a statement regarding *689 any other goods or services, the exemption would always deny the TCPA's protection to any vendor or merchant, regardless of the context of the person's speech. Yet the TCPA explicitly applies to claims based on communications regarding goods or services in the marketplace, regardless of the defendant's occupation. See id. § 27.001(3) (defining the defendant's "[e]xercise of the right of free speech" to mean "a communication made in connection with a matter of public concern"), .001(7)(E) (defining a matter of public concern to include an issue related to "a good, product, or service in the marketplace").
Certainly, a person may possess various capacities in which they can be sued, and not all those capacities are relevant to every suit. See, e.g. , Comm'n for Lawyer Discipline v. Benton , 980 S.W.2d 425, 431 (Tex. 1998) (discussing different standards that apply to lawyer's speech when he "is speaking as an individual citizen" and not "in his capacity as an officer of the court"); Foster v. Laredo Newspapers, Inc. , 541 S.W.2d 809, 814-15 (Tex. 1976) (holding that newspaper could not rely on "public official" standard in defense against libel claim because its communications addressed plaintiff's work in his capacity as an engineering consultant, even though plaintiff was also a public official). The mere fact that the defendant sells or leases goods or services does not prevent him from availing himself of the TCPA's expedited dismissal process when he speaks of other goods or services in the marketplace. We therefore conclude that, read within its statutory context, the exemption's requirement that "the statement or conduct arise[ ] out of the sale or lease of goods, services, ... or a commercial transaction" requires that the defendant engaged in the conduct on which the claim is based in his capacity as "a person primarily engaged in the business of selling or leasing goods or services." See, e.g. , BH DFW , 402 S.W.3d at 309 (holding that exemption did not apply where the contested speech did not arise out of the defendant's capacity as a seller of a service because the intended audience of the speech was the general public, not an entity seeking the defendant's service). Likewise, the statement or conduct at issue must arise out of a commercial transaction involving the kind of goods or services the defendant provides.
Finally, we conclude that "the intended audience" of the statement or conduct must be actual or potential customers of the defendant. O'Connor contends that the intended-audience requirement modifies only the term "commercial transaction" and does not require that the audience consist of "the defendant's" actual or potential customers. Relying on our decision in Sullivan v. Abraham , 488 S.W.3d 294, 297-98 (Tex. 2016), O'Connor asserts that if the Legislature intended for the intended-audience clause to qualify "the sale or lease of goods, services, or an insurance product, [or] insurance services," it would have included a comma after the last item of the series. Thus, under O'Connor's construction, the exemption requires that the statement or conduct arise out of:
(1) the sale or lease of
(a) goods,
(b) services, or
(c) an insurance product,
(2) insurance services, or
(3) a commercial transaction in which the intended audience is an actual or potential buyer or customer.
O'Connor maintains this is the proper reading because no comma follows the phrase "commercial transaction." See id. at 297 (" 'Punctuation is a permissible indicator of meaning.' Indeed, punctuation 'will often determine whether a modifying phrase or clause applies to all that preceded it or only to a part.' ") (quoting ANTONIN SCALIA & BRYAN GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 161 (2012)
*690 [hereinafter READING LAW ] ). At least one Texas court of appeals has agreed with this proposed construction. See Redflex , 2017 WL 4413156, at *12 (concluding that "the intended-audience phrase modifies only the term 'commercial transaction' " because the "lack of a comma after the term 'commercial transaction' signals that the legislature intended to limit the intended-audience phrase to the 'commercial transaction' item" and the term "commercial transaction" is followed by "in which," rather than "and").
But while properly placed commas can determine whether a modifier applies to the whole series or only the item immediately preceding the comma, they do not always dictate that determination. See Sullivan , 488 S.W.3d at 299 ("[T]he use of the Oxford comma is not definitive."). If a modifier cannot reasonably be interpreted to apply only to the most recent antecedent, punctuation does not require the Court to ignore reason. See READING LAW at 164-65 ("Perhaps more than any other indication of meaning, punctuation is often a scrivener's error, overcome by other textual indications of meaning.").
We cannot reasonably construe the exemption as O'Connor proposes. Construing the reference to an "intended audience" as a modifier of the reference to a "commercial transaction" is unreasonable because, at least in common usage, commercial transactions do not have "audiences." Nor, for that matter, do sales or leases of goods, services, or insurance products and services. The only reasonable construction is that the phrase "in which the intended audience is an actual or potential customer or buyer" modifies the exemption's earlier reference to the defendant's "statement or conduct" on which the claims are based.[4] Under this construction, the intended-audience clause modifies the statement or conduct, and "commercial transaction" is a catch-all for other commercial transactions not specifically listed. See Ross v. St. Luke's Episcopal Hosp. , 462 S.W.3d 496, 504 (Tex. 2015) ("Where the more specific items, [a] and [b], are followed by a catchall 'other,' [c], the doctrine of ejusdem generis teaches that the latter must be limited to things like the former.") (citing Hilco Elec. Co-op. v. Midlothian Butane Gas Co. , 111 S.W.3d 75, 81 (Tex. 2003) ); see also READING LAW at 147 ("When there is a straightforward, parallel construction that involves all nouns ... in a series, a ... postpositive modifier normally applies to the entire series.").
Thus, the commercial-speech exemption applies only to certain communications related to a good, product, or service in the marketplace-communications made not as a protected exercise of free speech by an individual, but as "commercial speech which does 'no more than propose a commercial transaction.' " Posadas de P.R. Assocs. v. Tourism Co. of P.R. , 478 U.S. 328, 340, 106 S.Ct. 2968, 92 L.Ed.2d 266 (1986) (quoting Va. Pharmacy Bd. v. Va. Citizens Consumer Council, Inc. , 425 U.S. 748, 762, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976) ) (discussing the "limited form of First Amendment protection" that commercial speech receives).
Here, although Castleman was primarily engaged in the business of selling goods, his allegedly defamatory statements did not arise out of his sale of goods or services or his status as a seller of those goods and services. Castleman made the *691 statements in his status as a customer or consumer of O'Connor's services. Moreover, the intended audience of Castleman's statements was not an actual or potential buyer or customer of the goods he sells. Castleman intended his statements to reach O'Connor's actual or potential customers. His statements constituted protected speech warning those customers about the quality of O'Connor's services, not pursuing business for himself. Neither Castleman nor his business stood to profit from the statements at issue, and although he might have been personally gratified by the damage the statements might make to O'Connor's business, the statements do not fall within the TCPA's commercial-speech exemption. We thus conclude that the TCPA's commercial-speech exemption does not apply here.
We do not hold, however, that Castleman was entitled to dismissal of O'Connor's claims. Under the TCPA's three-step process for resolving a motion for expedited dismissal, the moving party must first show "by a preponderance of the evidence" that the claim "is based on, relates to, or is in response to" the movant's exercise of a protected right. In re Lipsky , 460 S.W.3d 579, 586-87 (Tex. 2015) (quoting TEX. CIV. PRAC. & REM. CODE § 27.005(b) ). If the movant meets that burden, the nonmovant who asserted the claim must establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." Id. at 587 (quoting TEX. CIV. PRAC. & REM. CODE § 27.005(c) ). If the nonmovant fails to satisfy that burden, the court must dismiss the action within the TCPA's expedited time frame. TEX. CIV. PRAC. & REM. CODE § 27.005(d). If the nonmovant establishes the required prima-facie case, the movant may still obtain dismissal by establishing "by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." Id.
In denying Castleman's motion to dismiss under the TCPA, the trial court concluded that Castleman failed to establish that O'Connor's claims are based on Castleman's exercise of his right to free speech, and that O'Connor proved his prima facie case. Castleman appealed those findings to the court of appeals, but having concluded that the commercial-speech exemption applies, the court did not reach those issues. 545 S.W.3d at 686-87, 2017 WL 1449224, at *4. Therefore, without hearing oral argument, see TEX. R. APP. P. 59.1, we reverse the court of appeals' judgment and remand the case to the court of appeals to consider Castleman's remaining issues.

See, e.g. , Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc. , 441 S.W.3d 345, 354 (Tex. App.-Houston [1st Dist.] 2013, pet. denied) (holding exemption did not apply because intended audience of the Better Business Bureau's statements regarding plaintiff was the "consumer public at large, not the businesses to which the Bureau attempts to 'sell' its membership services"); Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd. , 416 S.W.3d 71, 89-90 (Tex. App.-Houston [1st Dist.] 2013, pet. denied) (holding exemption did not apply because defendants' statements were directed to the plaintiff's actual and potential customers, not the defendants' actual or potential customers, and arose out of the lease or sale of goods or services the plaintiff sells, not the goods or services the defendants sell); Better Bus. Bureau of Metro. Dall., Inc. v. BH DFW, Inc. , 402 S.W.3d 299, 309 (Tex. App.-Dallas 2013, pet. denied) (holding exemption did not apply because "the intended audience of the business review was the general public, not an entity seeking business accreditation from the BBB").

See also Backes v. Misko , 486 S.W.3d 7, 21 (Tex. App.-Dallas 2015, pet. denied) (holding TCPA's commercial-speech exemption applies only if defendant's intended audience was the defendant's actual or potential customers and the purpose of the statement was to promote and secure sales of "the goods or services of the person making the statement"); Whisenhunt v. Lippincott , 474 S.W.3d 30, 43 (Tex. App.-Texarkana 2015, no pet.) (finding exemption inapplicable because "nothing shows that [the] statements were made for the purpose of securing sales in the types of services in which [the speakers] were engaged ... or that the statements were made to their potential customers, as opposed to [the plaintiff's] potential customers"); Hicks v. Grp. & Pension Adm'rs, Inc. , 473 S.W.3d 518, 531 (Tex. App.-Corpus Christi 2015, no pet.) ("[F]or the exemption to apply, the statement must be made for the purpose of securing sales in the goods or services of the person making the statement .") (emphasis added); Schimmel v. McGregor , 438 S.W.3d 847, 858 (Tex. App.-Houston [1st Dist.] 2014, pet. denied) (holding exemption inapplicable because the "ultimate intended audience for [the movant's] statements" was the City of Galveston, and the movant, an attorney, "did not represent the City of Galveston, nor was the City a 'potential buyer or customer' of [the movant's] legal services"); Kinney v. BCG Attorney Search, Inc. , No. 03-12-00579-CV, 2014 WL 1432012, at *6 (Tex. App.-Austin, Apr. 11, 2014, pet. denied) (mem. op.) (holding exemption inapplicable because movant's statements "were made anonymously and made no reference whatsoever to his business or the sale of his services," and plaintiff offered no evidence that the statements were made "for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, [the movant's ] goods or services or in the course of delivering [the movant's ] goods or services") (emphasis added) (quoting Newspaper Holdings , 416 S.W.3d at 88 ).

See Castleman , 545 S.W.3d at 685-86, 2017 WL 1449224, at *3 (noting that the California exemption applies only if the statement or conduct is made by a "person" for "the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services ... or in the course of delivering the person's goods or services") (quoting Cal. Code Civ. Proc. § 425.17(c) ); see also NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C. , 745 F.3d 742, 755 (5th Cir. 2014) ("[T]he California Supreme Court's holding rested on a clause in the California statute that is not present in Texas's ... statute."); Redflex Traffic Sys., Inc. v. Watson , No. 02-16-00432-CV, 2017 WL 4413156, at *10, *12 (Tex. App.-Fort Worth, Oct. 5, 2017, no pet. h.) (mem. op.) (noting "substantial differences" between the California and Texas exemptions make the California test not "particularly helpful" and concluding that the Texas exemption is not inapplicable merely because "the intended audience of the notice of violation at issue here was not an actual or potential buyer or customer of [the movant]"); Glob. Tel*link Corp. v. Securus Techs., Inc. , No. 05-16-01224-CV, 2017 WL 3275921, at *3 (Tex. App.-Dallas, July 31, 2017, pet. dism'd) (mem. op.) ("[T]he California statute does not control or even assist in the interpretation of our statute.").

While "conduct" may not usually be said to have an "audience" either, the exemption's reference to "conduct," as we have explained, necessarily refers to the "communications" that constitute the defendant's "exercise of the" rights of association, free speech, and to petition. Within that context, the statements or conduct that constitute the exercise of a constitutional right typically do have an "audience."