**AFFIRM; and Opinion Filed July 9, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-01228-CV

## CLEAN ENERGY AND CLEAN ENERGY FUELS CORPORATION, Appellants
## V.
## TRILLIUM TRANSPORTATION FUELS, LLC AND TRILLIUM USA COMPANY, LLC, Appellees

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-10489**

## MEMORANDUM OPINION
Before Justices Bridges, Brown, and Nowell
Opinion by Justice Bridges

Appellees Trillium Transportation Fuels, LLC and Trillium USA Company (Trillium) sued appellants Clean Energy and Clean Energy Fuels Corporation (Clean Energy) for tortious interference with an existing contract, tortious interference with prospective business relationships, business disparagement, and conspiracy. Clean Energy filed a motion to dismiss under the Texas Citizens Participation Act (the TCPA). TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001-.011. The trial court denied Clean Energy's motion to dismiss. Because the TCPA's commercial speech exemption applies, the trial court did not err by denying Clean Energy's motion to dismiss. We affirm the trial court's judgment.

## Background

Trillium provides compressed natural gas (CNG) for the operation and maintenance (O&M) of mass transit systems. These mass transit systems typically conduct a bidding process in which CNG providers like Trillium submit a bid proposal for providing CNG. Clean Energy is a direct competitor of Trillium in the mass transit systems and retail markets.

According to Trillium's second amended petition, it "typically outperforms [Clean Energy] in winning mass transit bids and contracts because of Trillium's ability to provide tailored and more cost-effective design build and O&M services." After Clean Energy lost bid proposals to Trillium, Clean Energy "resorted to a systematic approach to covertly interfere" with contracts awarded to Trillium.[1] Trillium asserted Clean Energy approached Trillium's mass transit customers with misinformation concerning Trillium's pricing with the intended goal that Trillium's customers terminate its contracts. These customers included the San Diego Metropolitan Transit System (SDMTS), VIA Metropolitan Transit in San Antonio, Orange County Transportation Authority (OCTA), the City of Austin, and Fort Worth Transportation Authority.

Trillium filed suit against Clean Energy for tortious interference with an existing contract, tortious interference with prospective business relationships, business disparagement, and conspiracy. It claimed Clean Energy's purposeful interference with its existing contracts caused damages, loss of goodwill, and reputational injury.

Clean Energy subsequently filed a motion to dismiss under the TCPA. Clean Energy argued Trillium's claims stemmed from certain email communications. One email from SDMTS to Trillium stated the following:

---

[1] An email from Mark Barton, Clean Energy's vice president, stated Clean Energy lost a Las Vegas contract to Trillium because Trillium's five-year price was "half our price." He said they planned to "contact many of Trillium's existing transit customers and share this pricing information with them. Many of those agencies are paying Trillium rates that are double, triple, and even four times the rates that Trillium bid." He further stated, "The goal is to show Trillium's existing customers that their current O&M rates are out of market and encourage those customers to either renegotiate lower rates or terminate . . . ."

Kris and Jason

Your friend over at Clean Energy sent this to us implying that rates have dropped and we should look at a new contract. Is this correct? It looks like a major drop in price once you meet the 300K throughput level. Almost looks like it's an error or typo and some dropped $0.10 out of the cell cost on the whole sheet.

Let me know if this is correct and can you confirm if this is for Vegas.

Thanks,
Mike

Michael Wygant
Director of Fleet and Facilities Maintenance
San Diego Metropolitan Transit System

The "this" referenced in the email was attached information about the prices Trillium charged its other customers. In another email to SDMTS, Derek Turbide, Clean Energy's western region vice president, informed SDMTS that Clean Energy "lost a big CNG contract to Trillium" and attached pricing. The email further stated,

> I think this may be 3x or more less than what you are paying today and you may save a half a million bucks or more by terminating for convenience and resoliciting.
>
> Frankly, we didn't see this coming, so good on them, but I have a hunch these potential savings won't be overlooked by other large CNG agencies like MTS.
>
> Is this something MTS would consider? I hope so – I'd really appreciate an opportunity to come full circle and show you what we could do today.
>
> I would be happy to visit or discuss if you have questions. I hope to hear from you!

Clean Energy argued the TCPA applied to Trillium's claims because the above communications, as well as others, related to Clean Energy's exercise of its right to free speech on a matter of public concern. Because the TCPA applied to Trillium's claims, Clean Energy argued the burden shifted to Trillium to bring forth clear and specific evidence for each element of its causes of actions.

Trillium responded and argued the commercial speech exemption precluded application of the TCPA because Clean Energy's misconduct "did no more than propose a commercial transaction to potential customers for CNG O&M services." Trillium further attached evidence supporting its causes of action. Clean Energy challenged Trillium's evidence and the applicability of the commercial speech exemption in its reply to Trillium's response to the motion to dismiss.

After a hearing, the trial court denied Clean Energy's first amended motion to dismiss Trillium's claims without explanation. This appeal followed.

### The TCPA

The TCPA "protects citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding). That protection comes in the form of a motion to dismiss for "any suit that appears to stifle" the defendant's exercise of those rights. *Id*. Reviewing a TCPA motion to dismiss requires a three-step analysis. *Youngkin v. Hines*, 546 S.W.3d 675, 679–80 (Tex. 2018). Initially the moving party must show by a preponderance of the evidence that the TCPA applies to the legal action against it, meaning, the legal action is based on the exercise of the rights as defined in the TCPA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b). If the movant meets its burden, the nonmoving party must establish by clear and specific evidence a prima facie case for each essential element of its claim. *Id*. § 27.005(c). If the nonmoving party satisfies that requirement, the burden shifts back to the movant to prove each essential element of any valid defenses by a preponderance of the evidence. *Id*. § 27.005(d).

We review de novo the trial court's determinations that the parties met or failed to meet their burdens of proof under section 27.005. *Campbell v. Clark*, 471 S.W.3d 615, 623 (Tex. App.—Dallas 2015, no pet.). We also review de novo questions of statutory construction. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam).

–4–

Intertwined and overlaying this multi-step dismissal process is the TCPA provision exempting certain actions from the TCPA's application. *See* TEX. CIV. PRAC. & REM. CODE § 27.010 (establishing four exemptions). A party can avoid the TCPA's burden-shifting requirements by showing that one of the exemptions applies. *See Santellana v. CentiMark Corp.*, 2019 WL 1442228, at *3 (Tex. App.—Houston [1st Dist.] April 2, 2019, no pet.) (mem. op.). The nonmovant bears the burden of proving a statutory exemption. *MacFarland v. Le-Vel Brands LLC*, No. 05-16-00672-CV, 2017 WL 1089684, at *6 (Tex. App.—Dallas Mar. 23, 2017, no pet.) (mem. op.).

Specifically at issue here, section 27.010(b) provides that the TCPA —

> does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, . . . , or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

*Id*. § 27.010(b) (commonly referred to as the "commercial speech" exemption).

The Texas Supreme Court has recently explained that the commercial speech exemption applies when (1) the defendant was primarily engaged in the business of selling or leasing goods, (2) the defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services, (3) the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides, and (4) the intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides. *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018). *Castleman* aligns with the approach taken by other Texas appellate courts, including this one, concluding the challenged statement or conduct must be made "for the purpose of securing sales in the goods or services of the person making the statement." *See Backes v. Misko*, 486 S.W.3d 7, 21 (Tex. App.—Dallas 2015, pet. denied).

**Analysis**

Clean Energy argues the commercial speech exemption does not apply because (1) its communications were about Trillium's goods or services and not its own, and (2) the communications did not arise from a commercial transaction. Trillium responds (1) *Castleman* does not require the communication be about Clean Energy's goods or services for the exemption to apply and (2) section 27.010(b) requires a proposed transaction, not a completed one.

Trillium's second amended petition states "Defendants are direct competitors of Trillium. . . . Given the nature of their respective business, Trillium and Defendants directly compete with each other in both the mass transit and CNG spaces . . . and various municipalities in Texas." Further, Turbide testified during his deposition that Clean Energy is engaged in the business of selling or leasing goods and services related to CNG operations and maintenance. Therefore, it is undisputed Trillium has established the first two *Castleman* factors.

Turbide admitted in his deposition that SDMTS, the City of Austin, Fort Worth Transportation Authority, VIA Metropolitan Transit, and OCTA were customers or potential customers. Therefore, it is also undisputed Trillium satisfied the "intended audience" prong of *Castleman*.

We now consider the third *Castleman* prong— whether the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant (Clean Energy) provides. Clean Energy argues *Dickens v. Jason C. Webster, P.C.*, No. 05-17-00423-CV, 2018 WL 6839568 (Tex. App.—Dallas Dec. 31, 2018, no pet.) (mem. op.) controls the outcome of this case. We disagree. *Dickens* involved a dispute between two lawyers over an agreement to share a contingency fee in a wrongful death case. *Id.* at *1. Webster filed a declaratory judgment after the fee dispute arose, and Dickens subsequently filed a counterclaim alleging tortious interference. *Id.* Dickens alleged Webster made false and defamatory statements to the client

about Dickens, which included, among others, statements that (1) Dickens's contract with the client was "no good;" (2) Dickens was attempting to collect money from the client that he was not entitled to; (3) Dickens was not a trial attorney and was mishandling the case; (4) the client owed Dickens nothing because the fees were "a joke;" and (5) the client should terminate Dickens. *Id.* at *4. Webster filed a motion to dismiss under the TCPA, which the trial court granted. *Id.* at *1. On appeal, Dickens argued, among other things, that the commercial speech exemption applied. *Id.* In concluding the commercial speech exemption did not apply, we stated, "For the exemption to apply, the defendant's statements or conduct must be about the defendant's goods or services, not the plaintiff's." *Id.* at *6 (citing *Castleman* and *Glob. Tel\*Link Corp. v. Securus Techs., Inc.*, No. 05-16-01224-CV, 2017 WL 3275921, at *2 (Tex. App.—Dallas July 31, 2017, pet. dism'd)). We then held the statements at issue "all concern Dickens's services to or contract with [client]. They do not concern or arise out of Webster's services." *Id.*

Clean Energy's communications with Trillium's customers and potential customers are distinguishable. Although the email communications included information about Trillium and the alleged overpricing of its services, the intended goal of the emails was to persuade Trillium's customers and potential customers to terminate its contracts and allow Clean Energy an opportunity to bid on its goods and services.

For example, a January 26, 2018 email from a Clean Energy regional manager to a representative with the City of Austin described Clean Energy's business and stated, "[T]he purpose of this e-mail is to express our company's interest in providing operations and maintenance support services and pricing for the City'[s] CNG fueling station located at 2400 Business Center Dr., Austin, TX 78744." A follow up email included information about how much the City of Austin was allegedly overpaying for CNG station maintenance services through Trillium and implied Clean Energy could save the city almost $600,000 over the remaining five-

year contract by competitively bidding out the CNG maintenance services. A January 25, 2018 email from Clean Energy's regional manager attempted to "schedule a few minutes with you later next week to visit about your current CNG station operations and briefly *present our renewable CNG offering and support services*." [Emphasis added.]

An email from Turbide to a SDMTS representative attached Trillium's pricing, indicated SDMTS was overpaying in its current contract, and stated, "I'd really appreciate an opportunity to come full circle and *show you what we could do today*. I would be happy to visit or discuss if you have questions. I hope to hear from you!" [Emphasis added.]

Clean Energy sent a similar email to OCTA in which it encouraged OCTA to meet and "discuss how you can save two to three million dollars over the next three years."

While the above emails do not include Clean Energy's specific pricing information, they certainly involve the kind of goods and services Clean Energy provides (CNG O&M). Clean Energy sent unsolicited emails to Trillium's customers, indicated Trillium's prices were too high, and attempted to meet with Trillium's customers to "present our renewable CNG offering and support services" and discuss "what we could do today." The fact that the emails do not provide specific details about Clean Energy's pricing or business proposal does not mean the emails are not about Clean Energy's goods and services. Because part of Clean Energy's communications involves its goods and services, *Dickens* is distinguishable and does not control the outcome under these facts. *Dickens*, 2018 WL 6839568, at *6; *see also Giri v. Estep*, No. 03-17-00759-CV, 2018 WL 2074652, at *4 (Tex. App.—Austin May 4, 2018, pet. denied) (mem. op.) (concluding commercial speech exemption applied, in part, because veterinary's emails to certain recipients asking for their help if they were satisfied with his past services arouse out of a commercial transaction involving the services he provided). Accordingly, Trillium has established Clean Energy's communications concern and arose from its goods and services.

To the extent Clean Energy argues the commercial speech exemption does not apply because its statements or conduct do not arise out of a commercial transaction, we disagree. The TCPA does not define "commercial transaction." And, "nothing in the TCPA or the supreme court's analysis of this exemption requires that there have been a commercial transaction between the plaintiff and defendant." *Morrison v. Profanchik*, No. 03-17-00593-CV, 2019 WL 2202210, at *5 (Tex. App.—Austin May 22, 2019, no pet.). Rather, as the *Castleman* court recognized, the commercial speech exemption applies only to certain communications related to services in the marketplace—communications made not as a protected exercise of free speech by an individual, but as commercial speech which does "no more than *propose* a commercial transaction." *Castleman*, 546 S.W.3d at 690–91 (emphasis added). The court further implied the exemption applies when communications involve business pursuits for oneself or a business stands to profit from the statements at issue. *Id.* at 691; *see Staff Care, Inc. v. Eskridge Enters., LLC*, No. 05-18-00732-CV, 2019 WL 2121116, at *8 (Tex. App.—Dallas May 15, 2019, no pet.) (mem. op.) (commercial speech exemption applied when physician staffing agency pursued business for itself and stood to profit from communications as part of a commercial transaction when it told physicians they were not permitted to leave or work with Eskridge).

Turbide testified in his deposition that Clean Energy uses email, in-person visits, conferences, proposals, and solicitations to market its O&M services. He admitted he "tried to win San Diego Transit's business or begin the process of winning their business" knowing SDMTS had an existing contract with Trillium. "The purpose of my email was to start a dialogue about winning their business, and this seemed like a good way to do it." Thus, by emailing customers and implying that Trillium was overcharging and attempting to meet and "start a conversation" about Clean Energy's goods or services, Clean Energy proposed a commercial transaction and pursued business for itself with intention to profit from it. Moreover, the event that prompted

Clean Energy's unsolicited, targeted emails was a commercial transaction in which Trillium successfully bid (and Clean Energy unsuccessfully bid) for the goods and services both companies provide. Whether Clean Energy could succeed in its proposed commercial transaction is irrelevant to our analysis; therefore, Clean Energy's citation to municipal codes and federal regulations explaining the lengthy bidding process does not change our conclusion.

We conclude the commercial speech exemption applies, and therefore, the TCPA does not apply. TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(b). We overrule Clean Energy's first issue. Having concluded the TCPA does not apply, we need not consider whether Trillium established by clear and specific evidence each element of its claims. *See* TEX. R. APP. P. 47. Accordingly, the trial court did not err by denying Clean Energy's motion to dismiss.

**Conclusion**

We affirm the trial court's judgment.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

181228F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CLEAN ENERGY AND CLEAN
ENERGY FUELS CORPORATION,
Appellants

No. 05-18-01228-CV     V.

TRILLIUM TRANSPORTATION FUELS,
LLC AND TRILLIUM USA COMPANY,
LLC, Appellees

On Appeal from the 192nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-18-10489.
Opinion delivered by Justice Bridges.
Justices Brown and Nowell participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellees TRILLIUM TRANSPORTATION FUELS, LLC AND
TRILLIUM USA COMPANY, LLC recover their costs of this appeal from appellants CLEAN
ENERGY AND CLEAN ENERGY FUELS CORPORATION.

Judgment entered this 9th day of July, 2019.