**Affirmed and Opinion filed November 14, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-19-00505-CV

### JEFFREY HIEBER, Appellant

### V.

### PERCHERON HOLDINGS, LLC, AND PERCHERON PROFESSIONAL SERVICES, LLC, Appellees

**On Appeal from the 190th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2019-09794**

## OPINION

In this contract case, an employer sued a former employee, alleging breach of a non-compete and non-solicitation agreement. The employee moved to dismiss the suit under the Texas Citizens Participation Act ("TCPA"). After the trial court denied the motion, the employee filed this interlocutory appeal, challenging the trial court's ruling. Because we conclude that the employer's suit is exempt from the TCPA, we affirm the trial court's order denying the motion to dismiss.

# BACKGROUND

The plaintiffs in this case are two related entities, which we collectively identify as "Percheron." Percheron has offices in more than a dozen states, and it offers specialized expertise in land, right of way, surveying, and environmental services. Percheron markets these services to various industries, including oil and gas, utilities, and transportation.

The defendant is Jeffrey Hieber, who initially worked as an independent contractor for Percheron's predecessor. In 2007, Hieber became employed by Percheron itself, where he held the title of Regional Director of Field Services. In that role, Hieber was responsible for coordinating field services projects within Percheron's south central region.

In 2014, Percheron selected Hieber to participate in an incentive plan, which was designed to retain employees who contributed to the growth and profitability of the company. Hieber entered into that plan by executing a Unit Grant Agreement. Pursuant to that agreement, Percheron awarded Hieber 40,000 Incentive Units, which were Class B common shares that were set to vest over a period of four years. In exchange for those Incentive Units, Hieber agreed to be bound by certain non-compete and non-solicitation provisions, which stated in material part that he would not work for any of Percheron's competitors, and that he would not induce any of Percheron's customers to cease doing business with Percheron. The agreement further stated that Hieber would be bound by these provisions for two years after he left his employment with Percheron, or for as long as he held any Incentive Units, whichever period was longer.

In 2015, Percheron promoted Hieber to Vice President of Business Development. In this more senior role, Hieber became responsible for securing contracts and projects throughout the continental United States, not just within

Percheron's south central region. He also became responsible for developing new business relationships with companies and individuals, and for representing Percheron at industry meetings and social functions, where he was expected to spread awareness of the full range of services offered by Percheron. As a condition of his promotion, Hieber was required to forfeit half of his Incentive Units, which had not yet vested. He retained the remaining half, however, because they had already vested.

In 2018, Hieber gave Percheron his two weeks' notice of his intent to resign. Even though he specifically represented to Percheron that he was not leaving to join a competitor, Hieber had already signed an agreement to become the Vice President of Project Development for LJA Surveying, Inc., which provides the same services within the same industries and for the same types of customers as Percheron.

Within weeks of Hieber's resignation, Percheron learned that Hieber was representing LJA at the same industry events where he had formerly appeared on behalf of Percheron. When Percheron advised LJA about Hieber's non-compete agreement, LJA responded that Hieber had represented prior to his hiring that he was *not* subject to a non-compete agreement.

Percheron also learned that, after he joined LJA, Hieber was corresponding with one of Percheron's existing customers. Percheron had anticipated that it would secure a new project with this customer, but the customer ultimately awarded the project to LJA instead.

Based on the foregoing, Percheron sued Hieber for breach of the non-compete and non-solicitation agreement. Hieber filed an answer that generally denied the allegations against him. He also moved to dismiss Percheron's suit under the TCPA.

Percheron filed a lengthy response and asserted three independent reasons for denying the motion to dismiss. First, Percheron argued that the pleadings and evidence established a prima facie case for every essential element of its breach of contract claim. Second, Percheron argued that its legal action fell within the ambit of the TCPA's commercial speech exemption. And third, Percheron argued that the TCPA was preempted by the Texas Covenant Not To Compete Act.

Without stating its reasons, the trial court issued an order denying Hieber's motion. Hieber now challenges that ruling in this interlocutory appeal.

## ANALYSIS

Before a legal action may be dismissed under the TCPA, the movant must satisfy its initial burden of demonstrating by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the movant's exercise of the right of free speech, the right to petition, or the right of association. *See* Tex. Civ. Prac. & Rem. Code § 27.005(b).[1] If the movant satisfies this initial burden, then the burden shifts to the nonmovant to establish by clear and specific evidence a prima facie case for each essential element of the claim in question. *Id.* § 27.005(c). If the nonmovant satisfies that burden, then the burden shifts back to the movant to establish by a preponderance of the evidence each essential element of a valid defense. *Id.* § 27.005(d). Regardless of any such defenses, a nonmovant can avoid a dismissal altogether by establishing that its legal action is exempt from the TCPA under a specific statutory exemption. *Id.* § 27.010. Whether the parties have met these respective burdens is a question of law that we review de novo. *See Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019).

---

[1] There have been recent amendments to the TCPA, which became effective as of September 1, 2019. In this opinion, all citations to the TCPA refer to the pre-amendment version that was effective at the time that Percheron filed its suit.

4

In the trial court below, Hieber was the TCPA movant, and he argued that Percheron's legal action was a retaliatory suit based on his exercise of the right of free speech and the right of association. For the sake of argument only, we can assume without deciding that Hieber was correct and that he satisfied his initial burden. The question then becomes whether Percheron satisfied its burden as the nonmovant.

Attacking the TCPA motion on multiple fronts, Percheron argued that it established a prima facie case for its legal action, that its legal action was exempt under the TCPA's commercial speech exemption, and that the TCPA was preempted by another statute. We need only address the commercial speech exemption, because it is dispositive.

The commercial speech exemption provides that the TCPA "does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer." *See* Tex. Civ. Prac. & Rem. Code § 27.010(b).

To establish this exemption, the nonmovant must accordingly prove each of the following elements: (1) the movant was primarily engaged in the business of selling or leasing goods or services, (2) the movant made the statement or engaged in the conduct on which the claim is based in the movant's capacity as a seller or lessor of those goods or services, (3) the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the movant provides, and (4) the intended audience of the statement or conduct was an actual or potential customer of the movant for the kind of goods or services the movant provides. *See Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018) (per curiam).

5

The nonmovant must prove these elements by a preponderance of the evidence. *See Abatecola v. 2 Savages Concrete Pumping, LLC*, No. 14-17-00678-CV, 2018 WL 3118601, at *10 (Tex. App.—Houston [14th Dist.] June 26, 2018, pet. denied) (mem. op.). In deciding whether the nonmovant has satisfied that burden, the scope of our review includes the pleadings and any supporting affidavits, both of which are taken as evidence in the TCPA context. *See* Tex. Civ. Prac. & Rem. Code § 27.006; *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017). We also review this evidence in the light most favorable to the nonmovant. *See Brugger v. Swinford*, No. 14-16-00069-CV, 2016 WL 4444036, at *2 (Tex. App.—Houston [14th Dist.] Aug. 23, 2016, no pet.) (mem. op.).

Beginning with the first element—whether Hieber was primarily engaged in the business of selling or leasing goods or services—Percheron produced evidence about Hieber's professional responsibilities at both his former job and his current job. In its pleadings, Percheron averred that when it still retained Hieber as the Vice President of Business Development, his responsibilities included, but were not limited to, "maintaining existing and acquiring new customer relationships for Percheron's surveying business." Percheron further pleaded that Hieber remained in the surveying business when he joined LJA. Percheron specifically pleaded as follows: "Upon information and belief, Hieber continues to work for LJA in violation of his Agreement, and is performing duties for LJA that are the same as or similar to the duties he performed for Percheron. These duties include, without limitation, developing relationships with Percheron's customers and prospective customers on behalf of LJA."

In addition to these pleadings, Percheron relied on the unsworn declaration of Terry Rowe, a longstanding employee of Percheron who was familiar with Hieber prior to his resignation. *See* Tex. Civ. Prac. & Rem. Code § 132.001(a) (providing

6

that an unsworn declaration may be used in lieu of an affidavit). Rowe attested that he and Hieber had worked together securing contracts and projects from a particular customer. After Hieber joined LJA, the customer requested bids from multiple vendors for a large surveying project involving pipelines across three states. Percheron submitted a bid for that project, but the customer selected a competing bid from LJA, and Rowe attached email correspondence showing that Hieber was involved in the submission of LJA's bid. When combined with the pleadings, this evidence is more than sufficient to establish that Hieber was primarily engaged in the business of selling surveying services.

Hieber counters that the first element is negated as a matter of law because he "did not sell anything" and is merely an employee of LJA. This argument fails for at least two reasons. First, even if we were to disregard the affirmative evidence that Hieber has sold services on behalf of LJA (which Hieber has not addressed in his appellate briefing), there is no rule requiring a completed transaction before the nonmovant can claim the commercial speech exemption. To the contrary, even a proposed transaction will suffice. *See Castleman*, 546 S.W.3d at 690 (holding that the exemption applies to "commercial speech which does no more than propose a commercial transaction"); *Clean Energy v. Trillium Transp. Fuels, LLC*, No. 05-18-01228-CV, 2019 WL 3212145, at *5 (Tex. App.—Dallas July 9, 2019, no pet. h.) (mem. op.) (holding that the exemption applied even though no commercial transaction was completed). And second, the exemption can apply even though the movant is just an employee. *See Rose v. Sci. Mach. & Welding, Inc.*, No. 03-18-00721-CV, 2019 WL 2588512, at *5 (Tex. App.—Austin June 25, 2019, no pet.) (mem. op.) (holding that the exemption applied where the nonmovant's legal action was based on a misappropriation of trade secrets committed by an employee). This rule stems from the plain text of the statutory exemption, which requires us to

7

consider whether the movant is "engaged in the business" of selling goods or services, not whether the movant is the actual business itself. *See* Tex. Civ. Prac. & Rem. Code § 27.010(b).

For the second element, Percheron was required to show that its claim was based on either a statement that Hieber made in his capacity as a seller of surveying services, or on conduct in which he engaged as a seller of those services. The pleadings establish both bases. Beginning with conduct, Percheron pleaded that "through his employment with LJA, Hieber is in direct breach of the non-compete provisions of the Agreement." As for statements, Percheron pleaded in the very next paragraph that "Hieber has also breached the non-solicitations provisions of his Agreement with Percheron by inducing and attempting to induce Percheron's customers and prospective customers to move their business from Percheron to LJA, and by disclosing Confidential Information to customers and prospective customers in attempt to disparage Percheron and damage its customer relationships."

Hieber asserts in his brief, without any discussion of Percheron's actual pleadings, that the claim against him does "not arise over statements made in seller capacity." This assertion is plainly wrong. By pleading a breach of the non-solicitations provision, Percheron has established that its claim is based in part on statements made in Hieber's capacity as a seller of surveying services.

Next in his brief, Hieber attempts to cabin Percheron's pleadings by asserting that its claims are only "grounded in Hieber's acceptance of employment with LJA and his attendance at industry/charity events." This assertion is also unavailing. By pleading that Hieber has joined a competing surveying services business, Percheron has established that its claim is based in part on conduct in which Hieber engaged in his capacity as a seller of surveying services. Other evidence also shows that Hieber's attendance at industry and charity events is related to his capacity as a

8

seller. In particular, Hieber testified during his deposition that he attends these events to "make sure that the public is seeing LJA in a positive light." Exhibits from the deposition further show that Hieber is reimbursed for any expenses incurred while attending these events, because LJA considers the events opportunities for "direct selling."

Hieber does not challenge the remaining two elements in his brief, but we will address them anyways.

For the third element, Percheron was required to show that the statement or conduct at issue arose out of a commercial transaction involving the kind of services that Hieber provides. The conduct claim (i.e., working for a competitor in breach of a non-compete agreement) arises out of a commercial transaction that Hieber provides (i.e., surveying services). The statements claim (i.e., soliciting Percheron's customers and using Percheron's confidential information) likewise arises out of a commercial transaction involving the sale of surveying services. *See Callison v. C&C Personnel, LLC*, No. 09-19-00014-CV, 2019 WL 3022548, at *6 (Tex. App.—Beaumont July 11, 2019, pet. filed) (mem. op.) ("Utilizing confidential or proprietary information from a previous employer while working for a new employer to target and secure the same customers satisfies this element.").

Finally, for the fourth element, Percheron was required to show that the intended audience of Hieber's statements and conduct was an actual or potential customer for the kind of services that Hieber provides. Again, Percheron established through its pleadings and its evidence that, since joining LJA, Hieber has targeted one of Percheron's existing customers, and he has marketed the same type of surveying services to that customer as he did when he worked for Percheron.

Viewing the evidence in the light most favorable to Percheron, we conclude that the evidence establishes by a preponderance of the evidence that Percheron's

9

legal action is exempt under the TCPA's commercial speech exemption. Because this conclusion fully supports the trial court's ruling, we need not consider the parties' remaining arguments. *See* Tex. R. App. P. 47.1.

## CONCLUSION

The trial court's order denying the motion to dismiss is affirmed.


/s/    Tracy Christopher
Justice


Panel consists of Justices Christopher, Wise, and Hassan.