# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-20-00077-CV

---

**Molina Healthcare, Inc. and Molina Healthcare of Texas, Inc., Appellants**

**v.**

**The State of Texas ex rel. Chastiny Thurmond, Appellee**

---

### FROM THE 53RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GV-13-000451, THE HONORABLE KARIN CRUMP, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

This interlocutory appeal arises from a qui tam action brought under the Texas Medicaid Fraud Prevention Act (TMFPA) against appellants Molina Healthcare, Inc. (Molina Healthcare) and Molina Healthcare of Texas, Inc. (Molina Texas) (collectively, Molina Entities). On appeal, the Molina Entities challenge the district court's order denying their motion to dismiss brought under the Texas Citizens Participation Act (TCPA). Because the Relator's case is exempted from the TCPA, we affirm the district court's order.

## Background

STAR+PLUS is a Texas Medicaid managed-care program for people who have disabilities or are age 65 or older. Individuals enrolled in STAR+PLUS get Medicaid health-care and long-term services and support that is coordinated by or through a single provider

organization referred to as a managed-care organization (MCO). *See* 1 Tex. Admin. Code § 353.2(60) (2020) (HHSC, General Provisions). Molina Texas is an MCO that participates in STAR+PLUS under a contract with the Texas Health and Human Services Commission (HHSC).

Under its contract with HHSC, Molina Texas is obligated to provide a defined set of covered health-care and long-term services to eligible STAR+PLUS members. In return, Molina Texas receives a monthly capitated payment—i.e., a fixed, predetermined fee for each enrolled member that is not affected by the actual amount of covered services used by an enrolled member. *See id.* § 353.2(1) (defining "capitation rate"). Molina Texas contracts with separate providers to furnish the covered services and pays those providers for all covered services furnished to STAR+PLUS members. Molina Texas's contract with HHSC also obligates it to perform assessments of individuals seeking to establish eligibility for services, perform annual reassessments of those individuals already receiving services, and to forward those assessments to HHSC.

Relator Chastiny Thurmond, a former employee of Molina Texas, filed the underlying qui tam action on behalf of the State of Texas to assert claims under the TMFPA.[1] *See* Tex. Hum. Res. Code §§ 36.001–.0132. Relator alleges in her petition that Molina Healthcare, through its wholly owned subsidiary Molina Texas, violated the TMFPA by:

- Failing to perform, in violation of its contract with HHSC, initial assessments of STAR+PLUS members to determine whether they require long-term care and to what

---

[1] After reviewing the petition and related supporting evidence, the Attorney General declined to intervene in the case. *See* Tex. Health & Hum. Res. Code §§ 36.102 (requiring private person bringing action under TMFPA to serve copy of petition and evidence on attorney general), .104 (authorizing attorney general to take over or decline to take over qui tam action).

2

degree and by failing to perform, in violation of its contract, annual reassessments of those members who had been approved for long-term care.

- Concealing from HHSC that it had failed to properly assess members as required by its contract.

- Falsely representing to HHSC that certain members qualified for continued long-term care based on Molina's assessments of those members, resulting in HHSC paying Medicaid funds to providers for unnecessary services.

*See id.* §§ 36.002(1) (prohibiting false statements or misrepresentations of material fact relating to Medicaid payments or benefits), (2) (making it unlawful to conceal or fail to disclose information involving Medicaid benefits or payments), (10) (prohibiting MCOs from failing to provide to individuals a service that it is required by contract to provide; from failing to provide HHSC with information required to be provided by law, rule, or contract; and from engaging in fraudulent activity in connection with enrollment of individual or with marketing its service).

The Molina Entities filed a motion to dismiss Relator's claims, arguing that Molina Texas's communications to HHSC were an "exercise of the right of free speech," which the TCPA defines as "a communication made in connection with a matter of public concern." Tex. Civ. Prac. & Rem. Code § 27.001(3); *see id.* § 27.005(b)(1) (providing for dismissal of legal action that is based on movant's exercise of the right of free speech).[2] The communications were matters of public concern, the Molina Entities asserted, because they were related to "health or safety," "community well-being," and a "service in the marketplace." *Id.* § 27.001(7)

---

[2] The Legislature amended the TCPA in 2019, but those changes do not apply here because this action was filed before the effective date of the amendments. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 11–12, 2019 Tex. Sess. Law Serv. 684, 687 (specifying that TCPA amendments apply only to action filed on or after September 1, 2019). All citations to the TCPA in this opinion are to the version that applies to this dispute.

(defining "matter of public concern"). Relator opposed the motion to dismiss, arguing that the conduct at issue was not governed by the TCPA and, even if it were, the TCPA enforcement-action, commercial-speech, and insurance-contract exemptions applied to her claims. *See id.* § 27.010 (TCPA exemptions). The district court denied the motion. On appeal, the Molina Entities argue that the district court erred in denying the motion to dismiss because (1) the TCPA applies to Relator's claims; (2) no TCPA exemptions apply to Relator's claims; and (3) Relator failed to establish a prima facie case for her claims.

## Analysis

The TCPA provides a three-step decisional process to determine whether a lawsuit or claim should be dismissed under the statute. *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 132 (Tex. 2019); *see* Tex. Civ. Prac. & Rem. Code §§ 27.003 ("Motion to Dismiss"), .005 ("Ruling"). However, a non-movant can avoid the burden-shifting requirements by showing that one of the TCPA's several exemptions applies. *See State ex rel. Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018) (noting that if TCPA exemption applies, a movant "cannot invoke TCPA's protections"). For example, the "commercial speech" exemption removes certain commerce-related legal actions from the TCPA's protections:

> Th[e TCPA] does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

Tex. Civ. Prac. & Rem. Code § 27.010(d). Relator argues on appeal, and we agree, that the district court properly denied the motion to dismiss because Relator established that her TMFPA

4

action falls within the commercial-speech exemption. *See Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 887 (Tex. App.—Austin 2018, pet. denied) ("The burden to establish the commercial-speech exemption is on the party relying on it"); *see also* Tex. Civ. Prac. & Rem. Code § 27.006(a) ("In determining whether a legal action is subject to or should be dismissed under this chapter, the court shall consider the pleadings, evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based.").

The Texas Supreme Court has interpreted the commercial-speech exemption to apply when (1) the defendant (here, the Molina Entities) was primarily engaged in the business of selling or leasing goods or services, (2) the defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services, (3) the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides, and (4) the intended audience of the statement or conduct was actual or potential customers of the defendant for the kind of goods or services the defendant provides. *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018). The Molina Entities do not dispute that they are primarily engaged in the business of selling or leasing goods or services, and the pleadings and the evidence establish that the Molina Entities' business is selling Medicaid-related health-care services to the State of Texas through HHSC.[3] Specifically, HHSC pays Molina Texas to provide covered Medicaid-related health-care services to eligible STAR+PLUS members.

Regarding the second *Castleman* element, the statements at issue here are the allegedly false reports Molina Texas made to HHSC regarding whether certain members

---

[3] Molina Healthcare also sells Medicaid-related health-care services to other states.

qualified for or continued to qualify for the STAR+PLUS services that Molina Texas provided under its contract with HHSC. The pleadings and the evidence establish that Molina Texas made these statements as part of its contract with HHSC to provide health-care services. Specifically, the contract required that Molina Texas conduct assessments of certain individuals to determine need and eligibility for Medicaid-related services and to submit reports of those assessments to HHSC. Therefore, we conclude that Relator established that Molina Texas made the assessment reports in its capacity as a seller of health care-related services. *See Novosad v. LSG Vodka LLC*, No. 03-18-00804-CV, 2020 WL 4726599, at \*6 (Tex. App.—Austin July 31, 2020, no pet.) (mem. op.) (holding that defendant met second *Castleman* element because he engaged in conduct at direction of person who engaged his services).

The third *Castleman* element requires that "the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides." 546 S.W.3d at 688. Because the "sale . . . of . . . services" is a type of "commercial transaction" contemplated by the exemption, this element can be restated as asking, relevant here, whether the statement or conduct at issue arose out of the sale of services that the defendant provides. *See id.* at 690 (explaining that "'commercial transaction' is a catch-all for other commercial transactions not specifically listed" in section 27.010(b)); *see also* Tex. Civ. Prac. & Rem. Code § 27.010(b) (requiring that the "statement or conduct arise[] out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction"). As noted above, Molina Texas made the statements at issue here—i.e., the allegedly false assessment reports to HHSC—in connection with its provision of Medicaid-related services under its contract with HHSC and to comply with the requirements of that same contract.

The Molina Entities argue that Relator has not met the third *Castleman* element because the statements at issue in this case were not made in the context of "a proposed commercial transaction" involving Molina Texas's services. Relatedly, they argue that Relator has not shown that Molina Texas submitted the reports for the purpose of "securing a sale of their services." But there is nothing in the text of the exemption or in the *Castleman* elements that limits the exemption's applicability only to speech or conduct intended to secure future transactions. Instead, the TCPA simply requires that the statement "arose out of the sale . . . of services . . . or a commercial transaction." Tex. Civ. Prac. & Rem. Code § 27.010(b); *see Round Table Physicians Grp., PLLC v. Kilgore*, 607 S.W.3d 878, 886 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) (holding that *Castleman* does not limit commercial-speech exemption's applicability only to speech or conduct intended to secure future transactions (citing *North Cypress Med. Ctr. Operating Co. GP, LLC v. Norvil*, 580 S.W.3d 280, 286 (Tex. App.—Houston [1st Dist.] 2019, pet. denied))). Further, the text of the exemption contemplates both existing and future transactions by allowing that a statement be directed at "an actual or potential buyer or customer." Tex. Civ. Prac. & Rem. Code § 27.010(b); *see Round Table*, 607 S.W.3d at 886 (noting that statutory language "encompasses statements or conduct arising out of the sale of services in which the intended audience is an 'actual' customer, which includes customers who have already consummated a commercial transaction with the defendant"). Accordingly, we hold that Relator established that the statements at issue here arose out of the sale of services that the Molina Entities provide.

The final *Castleman* element requires that the intended audience of the statement be actual or potential customers of the defendant for the kind of goods or services that the defendant provides. *See* 546 S.W.3d at 688. Because Molina Texas's contract required that it

7

submit the assessment reports to HHSC, the intended audience of those reports was HHSC. And given the existence of the health care-services contract between Molina Texas and HHSC, HHSC was an "actual customer" of Molina Texas for the health-care-related services that it provides. The Molina Entities agree that HHSC was the intended audience of the assessment reports but they argue that Molina Texas's "actual or potential customers" for purposes of the commercial-speech exemption were eligible Medicaid recipients, not the HHSC. But a "customer" is someone who "*buys* goods or services," *Customer*, *American Heritage Dictionary of the English Language* (5th ed. 2011) (emphasis added); *see also Customer*, *Black's Law Dictionary* (11th ed. 2019) ("A buyer or purchaser of goods or services."), and the record here establishes that HHSC paid for Molina Texas's health-care-related services, not the individual Medicaid recipients. And even if the Medicaid recipients had paid, the fact that Molina Texas's contract with HHSC required it to perform and transmit assessment reports to HHSC means that, at the very least, HHSC was among the intended recipients of those reports. Accordingly, we hold that Relator satisfied the fourth *Castleman* element.

Based on the pleadings and evidence, we hold that Relator met her burden of establishing that her TMFPA action falls within the commercial-speech exemption and, therefore, the TCPA does not apply to this case. *See* Tex. Civ. Prac. & Rem. Code § 27.010(b). Because the TCPA does not apply, we need not address the Molina Entities' remaining issues, which address whether the parties met their respective burdens under the TCPA's dismissal procedure. *See* Tex. R. App. P. 47.1; *see also Harper*, 562 S.W.3d at 11 (noting that if TCPA exemption applies, movant cannot invoke TCPA's protections).

## Conclusion

Because Relator established that her cause of action is exempted from the TCPA's application, the district court did not err in denying the Molina Entities' motion to dismiss. Therefore, we affirm the district court's order.

_____
Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Baker and Kelly

Affirmed

Filed:   December 9, 2020

9