**Opinion issued December 31, 2020**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-19-00770-CV

_____

**HYDROCHEM LLC, KYLE LENG AND JOHN BRITTON, Appellants**

**V.**

**EVOQUA WATER TECHNOLOGIES, LLC, Appellee**

On Appeal from the 151st District Court
Harris County, Texas
Trial Court Case No. 2019-23641

## O P I N I O N

This is a TCPA case brought before the September 2019 amendments. Evoqua Water Technologies asserted various claims against its former employees, John Britton and Kyle Leng, as well as Britton and Leng's new employer, HydroChem. These included claims for trade secret misappropriation, violation of

the Texas Uniform Trade Secrets Act, and breach of contract. Evoqua's claims centered on Britton and Leng's move to the competitor entity in violation of various contract provisions and restrictive covenants and their alleged use of confidential trade secret information for HydroChem's financial benefit.

HydroChem, Britton, and Leng (collectively HCB&L) moved to dismiss Evoqua's claims under the TCPA's summary-dismissal provisions. The trial court denied the TCPA motion.

In five issues, HCB&L contend the trial court erred in denying their TCPA motion and in finding that their motion was frivolous or filed solely for purpose of delay.

We affirm.

### Background

John Britton and Kyle Leng worked in the sales department of ProAct Services Corporation. They signed various contractual agreements with their employer that contained restrictive covenants and trade-secret-protection obligations. In 2018, several companies entered into a private bid auction to acquire ProAct. Among those bidding were Littlejohn & Co., LLC and Evoqua Water Technologies, LLC. Evoqua was the prevailing bidder. Evoqua acquired ProAct. With the acquisition, Britton and Leng became Evoqua employees.

2

With the acquisition, Evoqua entered the field of servicing clients with on-site water treatment. John Britton became Evoqua's director of sales in its "water oil/gas division." Kyle Leng became Evoqua's director of sales in its "water/air remediation and construction division."

Littlejohn—which had been outbid in its effort to acquire ProAct—held a related entity named HydroChem, LLC. HydroChem also provided on-site services to treat contaminated water. In 2019, HydroChem successfully recruited Britton, Leng, and other Evoqua employees to leave Evoqua and become HydroChem sales employees. With Britton and Leng in its ranks, HydroChem operated as a direct competitor of Evoqua in the water-treatment industry.

Evoqua wrote to HydroChem demanding that Britton and Leng adhere to their contractual obligations to their former employer, including the protection of Evoqua's trade secrets and the non-compete and non-solicitation restrictive covenants in their contracts. Britton and Leng continued their employment at HydroChem. Litigation followed.

With claims and counterclaims pending, the parties entered into an agreed temporary injunction. HCB&L agreed not to disclose Evoqua's trade secrets, solicit Evoqua employees, or solicit Evoqua's customers. There were internal expiration dates for various aspects of the injunctive order. Britton and Leng also

3

agreed to and did return Evoqua's client and pricing lists that they had emailed to their private email accounts before resigning.

Within hours of the agreed temporary injunction's being entered, HCB&L filed a TCPA motion to dismiss Evoqua's claims against them. Evoqua's claims included breach of contract, tortious interference with existing contract, trade secret misappropriation, violation of the Texas Uniform Trade Secrets Act, violations of the Defend Trade Secrets Act, and breach of fiduciary duty, all arising out of Britton and Leng's alleged use of Evoqua's trade secrets to compete against Evoqua, solicitation of Evoqua's employees, and solicitation of Evoqua's customers for the financial benefit of their new employer, HydroChem.

Over HCB&L's objection, the trial court permitted Evoqua limited discovery. *See* TEX. CIV. PRAC. & REM. CODE § 27.006(b) (providing that trial court "may allow specific and limited discovery relevant to the motion" to dismiss). Evoqua deposed Britton and Leng, who admitted they knew they were bound by restrictive covenants but intentionally did not abide by those contractual obligations. They also admitted to soliciting Evoqua customers and employees. Further, the discovery revealed a business plan Britton and Leng had supplied to HydroChem while still working at Evoqua that demonstrated their intent to leave Evoqua, recruit others, and use Evoqua's market strategies to benefit HydroChem.[1]

---

[1] The trial court's findings of fact and conclusions of law detail these facts.

After receiving the evidence and considering the parties' pleadings, the trial court denied HCB&L's motion to dismiss and, in doing so, found that the motion was "frivolous or solely intended to delay" the case. The trial court indicated in its order that it would consider next the appropriate fee and cost award. The record reveals that Evoqua had requested more than $200,000 as an award. Before the trial court could determine the appropriate fee and cost award, HCB&L appealed the denial of their TCPA motion, thereby staying the litigation in the trial court. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(b) (providing that interlocutory appeal of denial of TCPA motion stays all proceedings in trial court pending resolution of appeal). This prevented the trial court from awarding fees and costs. It also allowed various time limits included in the temporary injunction to expire without immediate legal recourse.

## Denial of TCPA Motion was Appropriate because the Commercial-Speech Exemption Applies

The TCPA is found in Chapter 27 of the Civil Practice and Remedies Code, which is titled, "Actions Involving the Exercise of Certain Constitutional Rights." TEX. CIV. PRAC. & REM. CODE § 27.001–.011.[2] The TCPA's purpose is to protect "citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579,

---

[2] This case is decided under the pre-September 1, 2019 version of the statute. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378 Tex. Gen. Laws 684.

584 (Tex. 2015). It does so by creating a "set of procedural mechanisms through which a litigant may require, by motion, a threshold testing of the merits of legal proceedings or filings that are deemed to implicate the expressive interests protected by the statute, with the remedies of expedited dismissal, cost-shifting, and sanctions for any found wanting." *Serafine v. Blunt*, 466 S.W.3d 352, 369 (Tex. App.—Austin 2015, no pet.) (Pemberton, J., concurring); *see* TEX. CIV. PRAC. & REM. CODE §§ 27.003–.009.

The Legislature created exemptions to the TCPA. One of those exemptions is focused on sellers of goods and services, and it prevents sellers from characterizing their sales conduct and speech as the exercise of TCPA-protected rights if certain factors are met. *See* TEX. CIV. PRAC. & REM. CODE § 27.010(b)(2); *Blaze Sales & Servs., Inc. v. Am. Completion Tools, Inc.*, No. 01-19-00497-CV, 2020 WL 1917842, at *5 (Tex. App.—Houston [1st Dist.] Apr. 21, 2020, pet. denied) (mem. op.). The commercial-speech exemption repeatedly has been held to apply in the too-common scenario of employees leaving their employment to compete against their former employer, the former employer suing under trade-secret, breach-of-contract, and related theories, and the employees defending against those claims. *See, e.g.*, *Blaze Sales*, 2020 WL 1917842; *Alliant Ins. Servs., Inc. v. USI Sw. Inc.*, No. 01-19-00682-CV, 2020 WL 5269421 (Tex. App.—Houston [1st Dist.] Sept. 3, 2020, no pet.) (mem. op.); *Hieber v. Percheron*

6

*Holdings, LLC*, 591 S.W.3d 208 (Tex. App.—Houston [14th Dist.] 2019, pet. denied).

In each of these three cases, the former employees attempted summary dismissal of the claims against them by arguing that their communications and actions amount to an exercise of a TCPA-protected right, whether it be free speech, association, petition, or all three. *See Blaze Sales*, 2020 WL 1917842, at *3; *Alliant Ins. Servs.*, 2020 WL 5269421, at *2; *Hieber*, 591 S.W.3d at 211. The trial courts denied their TCPA motions. *Blaze Sales*, 2020 WL 1917842, at *1; *Alliant Ins. Servs.*, 2020 WL 5269421, at *1; *Hieber*, 591 S.W.3d at 210.

On appeal, the intermediate appellate courts, including this one, held that the TCPA summary-dismissal procedures were not available to the former employees because their speech and conduct were part of a broader scheme to acquire the former employer's employees and customers for a competitive advantage and financial gain, which brought them squarely within the TCPA's commercial-speech exemption. *Blaze Sales*, 2020 WL 1917842, at *6–8; *Alliant Ins. Servs.*, 2020 WL 5269421, at *5–7; *Hieber*, 591 S.W.3d at 212–13.

This is yet another of those cases. As explained below, we conclude the trial court did not err in denying HCB&L's motion to dismiss because the trial court could have correctly concluded that the commercial-speech exemption applies.

## A.     Standard of review

We review de novo the denial of a TCPA motion to dismiss. *Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 470 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd). In determining whether to grant or deny a motion to dismiss, the trial court considers the pleadings, supporting and opposing affidavits stating the facts on which the liability or defense is based, and any discovery permitted in connection with the TCPA motion. *See* TEX. CIV. PRAC. & REM. CODE § 27.006(a); *Bui v. Dangelas*, No. 01-18-01146-CV, 2019 WL 5151410, at *3, *8 n.5 (Tex. App.—Houston [1st Dist.] Oct. 15, 2019, pet. denied) (mem. op.). The pleadings and evidence are viewed in the light most favorable to the nonmovant. *Gaskamp*, 596 S.W.3d at 470; *N. Cypress Med. Ctr. Operating Co. GP, LLC v. Norvil*, 580 S.W.3d 280, 284–85 (Tex. App.—Houston [1st Dist.] 2019, pet. denied).

To the extent that our resolution of this case requires us to address issues of statutory construction, we review such issues de novo. *See ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017) (per curiam).

## B.     *Castleman* factors for commercial-speech exemption

The Texas Supreme Court has identified four elements to the commercial-speech exemption:

> (1) the defendant was primarily engaged in the business of selling or leasing goods or services;

(2) the defendant made the statement or engaged in the conduct on which the claim is based in its capacity as a seller or lessor of those goods and services;

(3) the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services that the defendant provides; and

(4) the intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides.

*Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018). The nonmovant—here, Evoqua—has the burden of demonstrating that the commercial-speech exemption applies. *Gaskamp*, 596 S.W.3d at 479.

HCB&L argues against application of the commercial-speech exemption by focusing on whether Evoqua's various claims were linked to an HCB&L communication to a customer. Under HCB&L's argument, only the causes of action that are linked to customer communications can be exempted, meaning that claims based on the solicitation of other Evoqua employees or misappropriation of trade secrets would fall outside the exemption. HCB&L's argument is unavailing.

The commercial-speech exemption can be based on communications or conduct. *Castleman*, 546 S.W.3d at 688. Moreover, the court may consider the overall scheme of conduct in analyzing whether the commercial-speech exemption applies; the court is not required to evaluate each communication or act in isolation. *See Blaze Sales*, 2020 WL 1917842, at *8 ("We do not agree, however,

9

that Appellants can isolate smaller communications within a larger scheme in order to avoid the commercial-speech exemption."); *Kassab v. Pohl*, No. 01-18-01143-CV, – S.W.3d –, 2020 WL 5552459, at *7 (Tex. App.—Houston [1st Dist.] Sept. 17, 2020, pet. filed Dec. 21, 2020) ("We do not agree that the alleged conspiracy scheme can be severed to avoid the commercial-speech exemption.").

Evoqua's petition and evidence establish each of the four *Castleman* factors. First, Evoqua established that HydroChem is primarily in the business of selling water treatment services. Britton and Leng left sales positions at Evoqua to work as sales directors at HydroChem, thereby assisting HydroChem with its efforts to sell its competing services. Evoqua satisfied the first factor by establishing that CHB&L are primarily in the business of selling goods or services. *See Gaskamp*, 596 S.W.3d at 480; *see also Hieber*, 591 S.W.3d at 212 (stating that "exemption can apply even though the movant is just an employee"); *Rose v. Scientific Mach. & Welding, Inc.*, No. 03-18-00721-CV, 2019 WL 2588512, at *5 (Tex. App.—Austin June 25, 2019, no pet.) (mem. op.) (concluding that "a high-level executive of a company that primarily designs and sells manufactured items to customers is also 'primarily engaged' in that type of business").

Second, Evoqua established that HCB&L engaged in the conduct on which its claims are based in the capacity of a seller of those services. Evoqua alleged that HCB&L's ultimate goal when HydroChem recruited Evoqua's employees,

Britton and Leng created a business development plan for HydroChem while still working at Evoqua, and HCB&L solicited Evoqua employees and customers was to benefit HydroChem as a competitor in the water-treatment service industry and to drive sales of its services. Evoqua was not required to point to specific statements during this course of conduct or to limit itself to statements made directly to customers; it was sufficient to point to conduct that forms the basis of Evoqua's claims that was made in HCB&L's capacity as a seller of services. *See Blaze Sales*, 2020 WL 1917842, at *7 (relying on nonmovant's allegation that movants' conduct was for purpose of securing business for themselves and undermining nonmovant's ability to compete for those same customers to satisfy second *Castleman* factor).

Third, Evoqua established that the conduct at issue arose out of a commercial transaction involving the kind of goods or services that HCB&L provides. When, as here, the conduct complained of is part of an ongoing effort to sabotage the former employer for the benefit of the new employer and drive future transactions with the acquired customers, this factor is met. *See id.* at *8; *Gaskamp*, 596 S.W.3d at 481 (holding that defendant's conduct targeting plaintiff's clients with "apparent objective of securing customers" for defendant satisfied requirement that conduct "arose out of a commercial transaction involving the kind of goods or services" that defendants provide); *Callison v. C & C Personnel, LLC*,

11

No. 09-19-00014-CV, 2019 WL 3022548, at *6 (Tex. App.—Beaumont July 11, 2019, pet. denied) (mem. op.) ("Utilizing confidential or proprietary information from a previous employer while working for a new employer to target and secure the same customers satisfies this element.").

Finally, Evoqua established that the intended audience of the conduct was actual or potential customers for the kind of services the defendant provides. The appropriate review of this factor permits consideration of the overall scheme at play when a company solicits a competitor's employees and those employees bring with them their former employer's trade secrets to woo customers to the new employer for its financial gain. *See Blaze Sales*, 2020 WL 1917842, at *8. Individual statements are not viewed in isolation, apart from the overall scheme alleged, which, here, was to acquire a competitor's employees and customers. *See id.*; *see also Kassab*, 2020 WL 5552459, at *7 ("We do not agree that the alleged conspiracy scheme can be severed to avoid the commercial-speech exemption."). Evoqua alleged that HydroChem cherry-picked its sales force, Britton and Leng breached their contractual obligations, including non-compete and non-solicitation restrictive covenants, and HCB&L used Evoqua's trade secrets to attract Evoqua's customers and gain a competitive advantage in the water-treatment services industry. The allegations fall squarely within the fourth *Castleman* factor. *See Blaze Sales*, 2020 WL 1917842, at *8 (stating that small acts are communications

"incidental to the larger scheme identified in [the nonmovant's] pleadings . . . [that was] directed toward their own actual or potential customers" in satisfaction of the fourth *Castleman* factor); *see also Staff Care, Inc. v. Eskridge Enters., LLC*, No. 05-18-00732-CV, 2019 WL 2121116, at *8 (Tex. App.—Dallas May 15, 2019, no pet.) (mem. op.) (holding that commercial-speech exemption applies when business for which one works stands to profit from statements or conduct at issue).

Because all four *Castleman* factors are met, the trial court did not err in denying HCB&L's motion to dismiss.

We overrule HCB&L's first four issues.

### Finding of Frivolousness or Purpose of Delay

In their last issue, HCB&L contend the trial court erred by finding that their motion to dismiss was frivolous or filed solely for purposes of delay.

**A.     Standard of review**

HCB&L contend that the appropriate standard of review is de novo, citing *Sullivan v. Tex. Ethics Comm'n*, 551 S.W.3d 848, 857 (Tex. App.—Austin 2018, pet. denied). But *Sullivan* confirms that the standard of review is abuse of discretion. *Id.* at 857 (reviewing decision to award attorney's fees on finding that TCPA motion was frivolous or solely intended to delay under abuse-of-discretion standard); *see Breakaway Practice, LLC v. Lowther*, No. 05-18-00229-CV, 2018 WL 6695544, at *4 (Tex. App.—Dallas Dec. 20, 2018, pet. denied) ("An

attorney's fees award under section 27.009(b) is entirely discretionary and requires the trial court to find the motion was frivolous or solely intended to delay."). A trial court abuses its discretion if its decision "is arbitrary, unreasonable, and without reference to guiding principles." *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997). A party seeking attorney's fees and costs bears the burden to put forth evidence regarding its right to the award. *Sullivan*, 551 S.W.3d at 857.

## B.    Trial court did not abuse its discretion

The trial court made many findings of fact in connection with the denial of HCB&L's motion to dismiss. The court found that HCB&L began the litigation between the parties when they filed a declaratory judgment action against Evoqua. In other words, HCB&L beat Evoqua to the courthouse. This required Evoqua to present its claims as counterclaims, even though Evoqua's position is one typically held by the plaintiff. The trial court found that, even before the TCPA motion was filed, the claims between the parties mirrored each other. In other words, Evoqua's counterclaims sought recovery on the same theories for which HCB&L's claims sought judicial relief. Together, these two findings reveal that HCB&L brought Evoqua to the courthouse and Evoqua's claims were mirror images of the ones HCB&L had already raised and were pursuing. This is not a case in which a party is unwillingly brought to court and then looks to the TCPA procedures to quickly and efficiently end the litigation.

The trial court also found that, through the TCPA discovery procedures, Britton and Leng admitted many aspects of Evoqua's claims. They admitted in their depositions that they knew they were in violation of their contractual obligations to Evoqua when they filed their suit and their motion to dismiss. They filed their motion to dismiss hours after the court entered their agreed temporary injunction. That injunction included specific dates certain provisions would expire. By filing a TCPA motion and immediately appealing its denial, thereby staying the litigation, HCB&L effectively prevented any action by Evoqua as the injunction terms expired. Further, in connection with the agreed temporary injunction, HCB&L disclosed that they had Evoqua customer and pricing information in their possession.[3]

Combined, the record demonstrates that HCB&L agreed to temporary-injunction terms that were given expiration dates and then engaged in a summary-dismissal procedure that would stay the litigation beyond those expiration dates, all the while admitting they violated their contractual obligations, as Evoqua had alleged. On this record, we conclude the trial court did not abuse its discretion in concluding that the TCPA motion was filed solely for purposes of delay. *See Borderline Mgmt., LLC v. Ruff*, No. 11-19-00152-CV, 2020 WL 1061485, at *9 (Tex. App.—Eastland Mar. 5, 2020, pet. denied) (mem. op.) (concluding no abuse

---

[3] These facts were detailed in the trial court's findings of fact and conclusions of law.

of discretion in awarding fees on finding that TCPA motion was filed solely for delay).

We overrule HCB&L's last issue.

## Conclusion

We affirm.

Sarah Beth Landau
Justice

Panel consists of Justices Keyes, Lloyd, and Landau.