In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-21-00311-CV
_____

H-E-B, L.P. AND H.E. BUTT GROCERY COMPANY, Appellants

V.

MAVERICK INTERNATIONAL, LTD., Appellee

_____

**On Appeal from the 172nd District Court**
**Jefferson County, Texas**
**Trial Cause No. E-207248**
_____

## MEMORANDUM OPINION

In a business dispute, Maverick International, Limited amended its petition to add business disparagement and defamation claims to the breach of contract claim it filed against H-E-B, L.P., and H.E. Butt Grocery Company, collectively H-E-B.[1] In response, H-E-B filed a motion

---

[1]In their pleadings and their motions, the parties do not explain the corporate relationship between the named defendants in the suit, H-E-B,

to dismiss Maverick's business disparagement and defamation claims, asserting the trial court was required to dismiss those two claims because by asserting them, Maverick had violated H-E-B's rights under the Texas Citizens Participations Act (TCPA).[2] The trial court denied the motion to dismiss, and H-E-B appealed.

On appeal, H-E-B argues its motion should have been granted for these four reasons:

1. Because the pleadings and evidence supporting the motion establish Maverick's claims were either based on or made in response to H-E-B's exercise of its rights to free speech or to petition;

2. Because the pleadings and evidence establish the commercial speech exemption does not apply to the statements Maverick made the basis of its business disparagement and defamation claims;

3. Because Maverick, in responding to H-E-B's motion to dismiss, failed to meet its burden to present prima facie evidence sufficient to show it could prove each element of its business disparagement and defamation claims; and

4. Even had Maverick done so, the evidence supporting H-E-B's motion establishes the statements H-E-B made about Maverick and the product Maverick sold H-E-B, which form the basis of

L.P., and H.E. Butt Grocery Company. Instead, the parties refer to the defendants collectively as "H-E-B." We will do so as well.

[2]*See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(12) (Supp.) (authorizing a person to file an interlocutory appeal from a district court's ruling denying a TCPA motion to dismiss); *id*. §§ 27.001-.011 (West 2020 & Supp. 2021) (TCPA).

Maverick's business disparagement and defamation claims, are true.

We conclude the speech at issue is commercial speech.[3] Because the speech is commercial speech, it is not protected speech under the TCPA.[4] For that reason, we conclude the trial court properly denied H-E-B's motion.

## Background

In early March 2020, Governor Greg Abbott certified the COVID-19 pandemic posed an imminent threat of disaster in the state.[5] Based on the threat, he declared a state of disaster existed in all Texas counties.[6] Fears that surrounded the unknown consequences of COVID-19 infections created demand for household cleaning products that would kill viruses on surfaces that might cause infections. In due course, demands for products used to disinfect surfaces led to shortages of some products on store shelves. H-E-B is a large supermarket chain based in San Antonio, Texas. Faced with demand-driven shortages, retailers like

---

[3]*See id.* § 27.010(b) (Supp.) (commonly called the commercial-speech exemption by courts).
[4]*Id.*
[5]https://gov.texas.gov/news/post/governor-abbott-declares-state-of-disaster-in-texas-due-to-covid-19 (last checked September 20, 2021).
[6]*Id.*

H-E-B sought new sources of supplies of products, like wipes, that were capable of killing germs when applied to a surface.

Maverick International, Limited is an industrial supply company in Jefferson County, Texas. Maverick markets an antimicrobial surface cleaner, known as BIOERASE. BIOERASE wipes are labeled as non-toxic and as capable of killing germs. There is no question that H-E-B agreed to buy BIOERASE cannisters from Maverick, but it then claimed Maverick breached the parties' agreement in at least two ways: (1) by failing to meet H-E-B's delivery deadlines for the product; and (2) by making a material misrepresentation about the labeling of the product when marketing it to H-E-B—specifically, by representing to H-E-B that the label for BIOERASE wasn't required to be registered with the Environmental Protection Agency for the product to be sold in retail stores.

When H-E-B refused to purchase all the BIOERASE it ordered, Maverick sued H-E-B in Jefferson County alleging H-E-B breached its agreement with Maverick to purchase six million cannisters of

4

"BIOERASE Antimicrobial Surface Wipes."[7] Initially, Maverick alleged only a breach of contract claim, suing H-E-B for not completing its agreement to purchase all six million cannisters of the BIOERASE wipes it ordered. After initially filing suit and suing H-E-B solely for breach of contract, Maverick amended its petition, adding claims for business disparagement and defamation. Maverick's business disparagement and defamation claims allege that H-E-B leaked and publicized information to the San Antonio News-Express, a newspaper that Maverick alleged is owned by the same corporate entity that owns the Beaumont Enterprise.

Patrick Danner, a reporter with the San Antonio News-Express, wrote the first of a series of articles about the lawsuit between H-E-B, Maverick, and Maverick's sale of BIOERASE on March 8, 2020. The San Antonio News-Express published Danner's first article on March 9, 2020. Danner obtained quotes for the first article he wrote from an H-E-B public relations department representative, Valentino Lucio. Lucio sent

---

[7]H-E-B had already sued Maverick in Bexar County regarding the contract dispute. Even though the evidence doesn't include a copy of the petition in the Bexar County suit, the newspaper articles in evidence show the Bexar County suit was already on file when Maverick sued H-E-B in Jefferson County. That said, the record does not show whether Maverick had been served with the suit H-E-B filed in Bexar County when it sued H-E-B in Jefferson County.

Danner a press release about H-E-B's dispute with a vendor, but the press release he sent Danner does not name Maverick. That said, Maverick alleged the statements that Danner attributed to H-E-B in his article defamed Maverick and "amount[ed] to business disparagement." While Danner wrote several follow-up articles about the H-E-B and Maverick lawsuit, the March 9 article, which quotes from Lucio's press release, lies at the heart of the parties' dispute. For that reason, we provide more detail about Lucio's press release and Danner's March 9 article here.

Before writing his March 9 article, Danner emailed the head of H-E-B's public relations department, Dya Campos, asking Campos whether H-E-B wanted to comment on an article he was planning to write. In the email, Danner told Campos the article was about "H-E-B suing Maverick International over its antimicrobial surface wipes." Campos assigned Valentino Lucio the task of sending Danner comments on the article for H-E-B. The press release Lucio sent Danner states:

> Throughout the pandemic, H-E-B has invested heavily and undergone significant efforts to source products our customers want and need in the face of unprecedented demand.

6

Unfortunately, our company is involved in a disagreement with a vendor who consistently failed to honor its commitments in a timely manner and did not meet its obligations. This left H-E-B without the products to fulfill customer needs and resulted in lost sales.

While H-E-B has satisfied its commitments and made every attempt at reaching a compromise, we cannot sit back and allow others to make unreasonable demands and threaten litigation. We would prefer to not go to court, but H-E-B must seek assistance to resolve this dispute based on meritless claims.

On March 9, Danner's article titled "H-E-B, Beaumont Partnership Wrangle Over Disinfecting Wipes" was published in the San Antonio News-Express. Danner's article identified Maverick by name, and it says the arrangement between H-E-B and Maverick "quickly deteriorated, however, with the grocer alleging Maverick International Ltd. failed to deliver the quantities ordered and missed deadlines." Purporting to quote Lucio, Danner's article then says: "Lucio described Maverick as a vendor that 'consistently failed to honor its commitment in a timely manner.' H-E-B was left without the products to fulfill customer needs, costing it sales, [Lucio] said in an email." Of course, while Lucio's press release said that "our company is involved in a disagreement with a vendor who consistently failed to honor its commitments in a timely manner . . .[,]" Lucio never specifically identified Maverick by name in the statement he

7

sent Danner. Maverick's amended petition alleges Danner's article was republished in the Beaumont Enterprise and in social media on the internet. And while the question of whether what Lucio said is in fact defamatory would be at issue if the statement is within the scope of the TCPA, the truthfulness of the statement is not at issue if the statement falls outside the TCPA's reach.

After Maverick amended its petition to add the disparagement and defamation claims, H-E-B moved to dismiss the two new claims, alleging they "were a frivolous attempt to manipulate venue and circumvent [the suit H-E-B filed] in Bexar county[.]" In its motion to dismiss, H-E-B argued the claims "interfere with H-E-B's right to petition and interfere with H-E-B's right to speech concerning matters of public interest[.]" As to its right to petition, H-E-B argued Maverick's business disparagement and defamation claims are tied to a series of newspaper articles published by the San Antonio News-Express.[8] And as to its exercise of its right to

---

[8]Only the first article quotes from the press release Lucio sent to Danner. Danner appears to have relied on allegations in the pleadings filed in lawsuits between H-E-B and Maverick for the information he used in the articles he wrote after March 9, specifically articles published in April and May 2021 about the lawsuits in the San Antonio News-Express based on the context of the statements in those articles.

8

free speech, H-E-B argued the comments it made about BIOERASE "occurred in connection with a matter of public concern" because the statements that it made concern "the placement and removal of a health and safety product in and from the marketplace" during an "unprecedented global health crisis brought about by the COVID-19 pandemic."

Relying on its theory that the TCPA applies to Maverick's disparagement and defamation claims, H-E-B argues Maverick had to present the trial court with clear and specific evidence sufficient to establish each essential element required to prove those claims. And even then, H-E-B claimed the statements it made about Maverick and BIOERASE were not actionable because they were true and "concerned ongoing litigation."

When Maverick responded, it first argued that H-E-B had not shown that H-E-B's disparaging remarks about Maverick were made while H-E-B was exercising its right to free speech. Second, Maverick argued the TCPA exempts commercial speech from the reach of the

9

TCPA, and that for that reason H-E-B's statements were beyond the reach of the TCPA.[9]

The language in the commercial-speech exemption that is relevant here provides:

> (a) This chapter does not apply to
>    (1) . . .
>    (2) a legal action brought against a person primarily engaged in the business of selling . . . goods . . . if the statement or conduct arises out of the sale . . . of goods . . . in which the intended audience is an actual or potential buyer or customer.[10]

In early September 2021, the trial court held a hearing on H-E-B's motion. Following the hearing, the court took the motion under advisement. In late September, the trial court signed an order denying H-E-B's motion to dismiss. But in its order, the trial court provided the parties with no explanation about why it denied H-E-B's motion. H-E-B filed a timely notice of appeal from the trial court's ruling denying its motion.[11]

---

[9]*See* Tex. Civ. Prac. & Rem. Code Ann. § 27.010(a)(2) (Supp.).
[10]*Id.*
[11]*See* Tex. R. App. P. 26.1(b), 28.1(b).

Standard of Review

On appeal, we apply a de novo standard to review whether a legal action, filed under the TCPA, "is based on" or "is in response to" a party's exercise of its right to free speech or to petition.[12] In our review, we consider the parties' live pleadings, the evidence that was before the trial court when it ruled on the motion, and any affidavits that were before the court supporting or opposing the motion to dismiss.[13]

Generally, when reviewing a TCPA motion to dismiss, we follow a burden shifting scheme, which has several steps.[14] First, the party that files the motion has an initial burden to show by a preponderance of the evidence that the action "is based on" or "is in response to" the party's exercise of its right of free speech, right to petition, or of association, or that its action arises from other acts described in another section of Chapter 27 that are not relevant here.[15] If the party that filed the motion passes the "is based on" or "in response to" hurdle, the burden shifts to

[12]*Walker v. Hartman*, 516 S.W.3d 71, 79-80 (Tex. App.—Beaumont 2017, pet. denied); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a).

[13]*See* Tex. Civ. Prac. & Rem. Code Ann. § 27.006; *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015).

[14]*See In re Lipsky*, 460 S.W.3d at 586.

[15]Tex. Civ. Prac. & Rem. Code Ann. §§ 27.003(a), 27.005(b) (Supp.); *In re Lipsky*, 460 S.W.3d at 586.

the party that filed the suit to establish by "clear and specific evidence a prima facie case for each essential element of the claim in question."[16] Finally, if the non-movant establishes its prima facie case, the movant may still succeed by establishing an affirmative defense that allows the movant to prevail as a matter of law, even if the non-movant presents prima facie proof that is sufficient as to each of the elements of its claim.[17] And finally, to avoid the burden shifting scheme entirely, the party responding to the motion to dismiss may "avoid the TCPA's burden-shifting requirements by showing an exemption [to the TCPA] applies."[18]

Analysis

The TCPA protects citizens from retaliatory suits filed to silence or intimidate them on matters of public concern.[19] The protections afforded by the Act are enforced through a special expedited procedure, which allows parties when faced with a retaliatory legal action, filed in violation

---

[16]Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c) (Supp.); *In re Lipsky*, 460 S.W.3d at 587.

[17]Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d) (Supp.); *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018).

[18]*Callison v. C&C Pers., LLC,* No. 09-19-00014-CV, 2019 WL 3022548, at *3 (Tex. App.—Beaumont July 11, 2019, pet. denied) (mem. op.); *see* Tex. Civ. Prac. & Rem. Code Ann. § 27.010.

[19]*In re Lipsky*, 460 S.W.3d at 586; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.002.

of the TCPA, to get the suit quickly dismissed if it was in fact filed to silence or intimidate the party's exercise of its First Amendment rights.[20] Still, there are exemptions to the TCPA's coverage, and a party may avoid the TCPA's burden-shifting requirements upon showing that one or more of the twelve exemptions in section 27.010 of the TCPA applies.[21] Maverick argues the commercial-speech exemption applies to speech at issue here.

According to H-E-B, the affidavits, evidence, and pleadings before the trial court establish that Maverick amended its petition to add business disparagement and defamation claims in retaliation for the public statements H-E-B made in a press release it issued about its dispute with Maverick and in retaliation for H-E-B suing Maverick in Bexar County. H-E-B notes that Maverick amended its breach-of-contract lawsuit within days of the San Antonio News-Express's publication of a news article about a lawsuit H-E-B filed against

---

[20]Tex. Civ. Prac. & Rem. Code Ann. § 27.003; *see also in re Lipsky*, 460 S.W.3d at 586.

[21]Tex. Civ. Prac. & Rem. Code Ann. § 27.010 (a)(1)-(12) (Supp.); *Temple v. Cortez Law Firm, PLLC*, No. 05-21-00367-CV, 2022 WL 1955755, at *4 (Tex. App.—Dallas June 3, 2022, no pet.) (mem. op.). .

13

Maverick in Bexar County that involved the BIOERASE wipes. Maverick's petition, H-E-B observed, even says its claims are based on statements H-E-B made to the press.

H-E-B also argues the statements H-E-B's employees made to Danner were on matters of *public concern*, so its statements qualify as protected speech under the TCPA. According to H-E-B, because Danner solicited the comments about the lawsuit between H-E-B and Maverick, the comments he was given and that he included in his article must have been on matters of *public concern* because the San Antonio News-Express wouldn't have published them if they weren't. What's more, H-E-B claims the statements Danner attributed to H-E-B in the articles were about matters of *public concern* because the articles related to products marketed to disinfect surfaces during the COVID-19 pandemic when there were shortages of those types of products on store shelves.[22]

In response to these arguments, Maverick contends the comments H-E-B included in its press release did nothing more than address a

---

[22]Tex. Civ. Prac. & Rem. Code Ann. § 27.001(3) (defining *exercise of the right of free speech* as "a communication made in connection with a matter of public concern"); *id.* § 27.001(7)(B) (defining *public concern* to include matters of social interest to the community); *id.* § 27.001(7)(C) (defining *public concern* to include "a subject of concern to the public").

private business dispute between two parties over an agreement, a matter that didn't concern the public. And Maverick claims that when the press release was issued in March 2020, nothing in the record shows that the Environmental Protection Agency had raised concerns about the product's label. And as for shortages of disinfecting wipes, Maverick argues the evidence H-E-B presented failed to account for other sources from which it was purchasing products used to disinfect surfaces, like bleaches and sprays of multiple brands.

Since commercial-speech is exempted from the reach of the TCPA, we first consider whether that exemption applies to the speech at issue before analyzing the speech under the burden-shifting standard that applies to speech that falls within the reach of the TCPA. The Rules of Appellate Procedure support resolving appeals by first deciding whether an exemption applies if that will resolve the appeal before analyzing others that might prove to be even more difficult and time-consuming issues as a matter of judicial economy.[23]

---

[23]Tex. R. App. P. 47.1 (allowing intermediate appellate courts to limit their discussion of the issues to those necessary to decide the appeal).

On appeal, Maverick argues H-E-B's communications with Patrick Danner, which is the speech on which its disparagement and defamation actions are based, are exempted from the TCPA's reach by the commercial-speech exemption. The commercial-speech exemption provides the Act doesn't apply to

> a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer.[24]

A four-part test applies to determining whether speech is commercial-speech, meaning it qualifies as exempted-speech outside the reach of the TCPA by virtue of section 27.010(a)(2).[25] As to goods, the test is

> (1) the defendant was primarily engaged in the business of selling or leasing goods,
> (2) the defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods [ ],
> (3) the statement or conduct at issue arose out of a commercial transaction involving the kind of goods [ ] the defendant provides, and

---

[24] Tex. Civ. Prac. & Rem. Code Ann. § 27.010(a)(2) (Supp.).
[25] *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018) (per curiam).

16

(4) the intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods [ ] the defendant provides.[26]

In response to Maverick's argument, H-E-B argues there are three reasons the commercial-speech exemption doesn't apply:

(1) It made the statements on which Maverick's business disparagement and defamation claims are based in its capacity as a litigant, not in its capacity as a seller of a good;

(2) The lawsuits between H-E-B and Maverick are the subject of the communications between H-E-B and the reporter from the San Antonio News-Express, Patrick Danner, and the subject of the communications is not the BIOERASE product that Maverick sold to H-E-B.

(3) H-E-B's customers were not the intended audience for the statements H-E-B made to Patrick Danner about the lawsuits between Maverick and H-E-B.

As the party raising the exemption, Maverick had the burden to prove the exemption applied.[27] To determine whether Maverick met its

---

[26] *Id.*

[27] *See Hieber v. Percheron Holdings, LLC*, 591 S.W.3d 208, 211 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (placing the burden of proof on the party seeking to apply the commercial-speech exemp[tion]); *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (same); *see also McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003) (holding that the defendant, a doctor, had burden of proof to establish the Good Samaritan statute applied since the Good Samaritan statute is an exemption to a malpractice action).

burden, we look to the pleadings and evidence the trial court considered when it denied H-E-B's motion.[28]

To begin, we note the parties do not dispute that Maverick's disparagement and defamation claims are "legal actions" under the TCPA.[29] For that reason, we need not discuss this requirement of the exemption. And the parties have also not disputed that the pleadings and evidence before the trial court establish that H-E-B is "primarily engaged in the business of selling . . . goods."[30]

That said, H-E-B does argue that it made the statements that Maverick made the basis of its disparagement and defamation claims in its capacity as a party to a lawsuit rather than in its capacity as a seller of goods. So it concludes the trial court erred in concluding that Maverick met its burden under the second part of the *Castleman* test.[31]

To decide whether H-E-B was acting in its capacity as a seller of a good as to the statements at issue here, we consider the context in which

---

[28]*See* Tex. Civ. Prac. & Rem. Code Ann. § 27.006.
[29]*See id.* § 27.001(6) ("'Legal action' means a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief.").
[30]*See id.* § 27.101(a)(2).
[31]*See Castleman*, 546 S.W.3d at 688.

the statements were made.[32] Essentially, H-E-B's claim hinges on its theory that it gave the press release to Danner for just one reason—because it was a party to a suit between Maverick and H-E-B in Bexar County. And while H-E-B's status as a party to that lawsuit appears to be what led Danner to call H-E-B for a comment about his impending article, the question is whether the comments H-E-B made were made solely in its capacity as a litigant or rather in its capacity as both a litigant and as a seller of goods.

The language Lucio included in his press release answers the question. In the press release, Lucio refers to H-E-B's role as a seller and does not confine himself to the lawsuit. He mentions H-E-B's "efforts to source products our customers want and need in the face of unprecedented demand." Then, the press release states that H-E-B's vendor's failure to honor its commitments "left H-E-B without the products to fulfill customer needs and resulted in lost sales." Even though the press release didn't identify Maverick by name, H-E-B knew Danner would mention Maverick in the article, as Danner, in the email he sent

---

[32] *See Hawkins v. Fox Corp. Housing, LLC*, 606 S.W.3d 41, 47 (Tex. App.—Houston [1st Dist.] 2020, no pet.).

19

to Campos earlier, had already informed H-E-B that he was writing an article about H-E-B suing Maverick over its dispute with Maverick over the BIOERASE wipes.

Viewed in context, we conclude Maverick met its burden to prove that H-E-B issued the press release in its capacity as a seller of BIOERASE wipes since those are the goods that are the focus of Danner's article.[33] Moreover, nothing in section 27.010 requires the party who relies on the commercial-speech exemption to show the actor spoke solely in its role as a seller of goods rather than speaking in two and possibly even more capacities.[34]

Next, H-E-B argues Maverick didn't meet its burden of proof to show the statement or conduct on which the action is based arose out of the sale of the goods, which is the third part of the *Castleman* test.[35] Relying on the *arises out of* language in the commercial-speech exception, H-E-B argues that Maverick's disparagement and defamation claims arose from Patrick Danner's articles and not from H-E-B's sales of the

---

[33]On March 8, 2021, when H-E-B sent Danner the press release, Maverick had not yet sued H-E-B in Jefferson County. Maverick sued H-E-B in Jefferson County on March 9.

[34]Tex. Civ. Prac. & Rem. Code Ann. § 27.010.

[35]*See Castleman*, 546 S.W.3d at 688.

BIOERASE Antimicrobial Wipes.[36] According to H-E-B, Maverick's legal action for disparagement and defamation did not arise from the sale of wipes, but arose instead from the articles written by Danner.[37]

We disagree with the narrow construction H-E-B gives to the phrase *arises out of* in section 27.010.[38] First, we need to mention that Chapter 27 does not define the phrase *arises out of* or the word *arise*.[39] If the phrase implies a *but for* test, that requirement is satisfied here. Had Maverick and H-E-B never entered into the alleged sales agreement for the wipes, there wouldn't have been a contract involving the sale of the wipes or a lawsuit, the two events that occurred and then resulted in Danner's investigation and the newspaper articles that followed.

Second, in the absence of a definition of a word in a statute, we assume the legislature intended for the courts to apply the common meaning of the word's terms, which in this case is the term *arise*.[40] We look to Webster's Dictionary for guidance when deciding what a word

---

[36]*Id.*

[37]*See* Tex. Civ. Prac. & Rem. Code Ann. § 27.010(a)(2) (Supp.).

[38]*Id.*

[39]*See id.* §§ 27.001-.011 (West 2020 & Supp. 2021).

[40]*See id.* § 1.002 (Construction of Code); Tex. Gov't Code Ann. § 311.011(a) (Common and Technical Usage of Words).

commonly means.[41] In the context the legislature used the word *arise* in section 27.010, the dictionary definitions that apply define *arise* as "to originate, to come into being, to become operative, to appear, to become apparent."[42] Here, we are not persuaded the statements in H-E-B's press release would have originated, come into being, have become operative, appeared, or would have become apparent without both the sale of the BIOERASE wipes and the lawsuit.

Last, H-E-B argues Maverick failed to show that H-E-B's customers were H-E-B's intended audience for Danner's March 8 press release. Consequently, H-E-B concludes Maverick failed to meet its burden on the fourth element of the *Castleman* test.[43] We disagree.

Looking to the language in the press release, there's no question that the greater San Antonio community was certainly Danner's intended audience. But who was H-E-B's intended audience for its press

[41]*Id.*

[42]WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 117 (2002) (examples omitted); *see also Arise*, Black's Law Dictionary (9th ed. 2009) ("to originate; to stem (from); to result (from); To emerge"); *Giri v. Estep*, No. 03-17-00759-CV, 2018 WL 2074652 (Tex. App.—Austin May 4, 2018, pet. denied) (defining *arise* in section 27.010(a)(2) as meaning "to result, issue, or proceed").

[43]*See Castleman*, 546 S.W.3d at 688.

release? Many people in the greater San Antonio community are H-E-B's actual and potential customers. Knowing that's the case, H-E-B gave Danner a press release in which it

- identified itself by name five times,
- referenced H-E-B's customers twice,
- designed a public relations piece demonstrating to H-E-B's actual and potential customers that H-E-B was trying to supply its stores with products in short supply even though the products were in great demand due to the pandemic, and
- placed no fault on itself for not having the products on its shelves and instead placed the blame on an unnamed vendor, knowing Danner would name the vendor in his article.

We conclude Maverick carried its burden to show H-E-B's intended audience in drafting the press release was its actual and potential customers. Even assuming the statements that H-E-B made in the press release are all true—a matter on which we express no opinion—the statements fall outside the reach of the TCPA because they are subject to the commercial-speech exemption.[44] Besides, H-E-B has other remedies to obtain a dismissal of Maverick's defamation and disparagement claims if those claims are without merit.[45]

---

[44]Tex. Civ. Prac. & Rem. Code Ann. § 27.010(a)(2).
[45]*See* Tex. R. Civ. P. 166a (Summary Judgment).

23

## Conclusion

Because Maverick met its burden to show the commercial-speech exception applies to its disparagement and defamation claims, we conclude the trial court did not err in denying H-E-B's TCPA motion to dismiss. We overrule H-E-B's second issue. Given the conclusion the commercial-speech exemption applies, we also conclude we need not reach the arguments H-E-B raises in issues one, three and four. Addressing those three issues would not change the outcome in the appeal.[46] For the reasons explained above, the trial court's ruling is

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on June 9, 2022
Opinion Delivered October 6, 2022

Before Golemon, C.J., Kreger and Horton, JJ.

---

[46]Tex. R. App. P. 47.1.