# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00466-CV

---

**Bryce Carpenter, Appellant**

**v.**

**Daspit Law Firm, PLLC and Robert Morse, Appellees**

---

### FROM THE 345TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-22-002408, THE HONORABLE MADELEINE CONNOR, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Bryce Carpenter appeals the trial court's denial of his Texas Citizens Participation Act (TCPA) motion to dismiss that he filed in response to the Daspit Law Firm (DLF)'s suit against him for claims of breach of fiduciary duties of confidentiality and loyalty, tortious interference with a contract, theft, conversion, and breach of contract. *See generally* Tex. Civ. Prac. & Rem. Code §§ 27.001–.011. We affirm.

## BACKGROUND

The facts in this case are largely undisputed. DLF is a nationwide law firm that primarily represents individuals in personal injury suits. Specifically, it specializes in cases involving motor vehicle accidents, premises liability cases, plant explosions, workplace injuries, and other negligent acts. DLF has several offices across Texas, including Houston and Austin. In October 2021, DLF hired Bryce Carpenter in an at-will capacity as an associate attorney in its Austin office. As a newly licensed attorney, Carpenter had only been out of law school for a little

1

over a year when he was hired.  Because DLF's Austin office was small, Carpenter worked primarily from his home using his firm-issued laptop.

DLF gave Carpenter access to information not available to public use, including pleadings, confidential and protected client information, proprietary software, referral sources, and the firm's current list of clients and their contact information.  During his time at DLF, Carpenter was assigned approximately forty-one cases.  These cases required him to file routine pleadings, notice depositions, and conduct discovery.  His role was not managerial in nature, nor did it involve strategic decision-making with regards to the progression of litigation matters.  Carpenter did not originate any of the forty-one clients during his time at DLF.

In February 2022, DLF terminated Carpenter for cause related to non-performance of his essential job duties.  In response, Carpenter sent a lengthy email to all firm employees, stating he believed his firing was "personal" and giving reasons why he believed John Daspit was an ungrateful and disrespectful manager to his employees.  According to Carpenter, Robert Morse, a partner at DLF, called Carpenter approximately two hours after the email was sent and made threatening statements, indicating he would "bury" Carpenter and would "do everything [he could] to hurt [Carpenter]."  Carpenter had secretly recorded the conversation and posted the recording of Morse's threats to social media.

Approximately one week later, DLF received an email from a client stating that Carpenter had called the client and asked him to come "with [Carpenter] to [Carpenter's] new firm."  According to the client, Carpenter believed that it "made sense" for the client to carry over his case to Carpenter's solo practice because Carpenter had worked on his case at DLF.  The client refused Carpenter's offer because he did not believe Carpenter possessed the necessary resources or staff to litigate the client's case.

2

This email prompted DLF to investigate Carpenter's other, post-termination client communications. DLF eventually learned that Carpenter had solicited and successfully retained the continuing business of four of DLF's clients. In response, DLF immediately filed suit against Carpenter in Harris County for various causes of action, including breach of fiduciary duties of confidentiality and loyalty, tortious interference with a contract, theft (under the Texas Theft Liability Act), conversion, and breach of contract.[1]

DLF claimed that, by inducing four clients to terminate DLF and hire Carpenter in a solo capacity, Carpenter substantially diminished DLF's contingency-fee expectations in those matters. DLF expected Carpenter to settle those claims for substantially less than DLF based on Carpenter's lack of litigation experience. Additionally, DLF claimed that Carpenter was wrongfully in possession of "proprietary and confidential files belonging to DLF, including a list of clients and their contact information . . . [and] unauthorized and highly sensitive personal information such as social security numbers and driver's license numbers and other identification materials that are property of DLF clients . . . [and] highly sensitive protected health information shielded under HIPAA" and that this amounted to a "data breach."

DLF also moved for a temporary injunction that Carpenter either return to DLF or destroy "all data, documents, forms, pleadings, electronic media of any kind and technical information taken from DLF," cease representation of any clients obtained as a result of the alleged breaches of fiduciary duties to DLF, and submit all computers, servers, laptop computers, flash

---

[1] DLF initially also pursued claims of defamation and defamation per se but dropped those claims in the second amended petition.

drives, or other hardware for inspection by [DLF's] computer forensic examiner."[2] Carpenter filed an answer, which included counterclaims for assault by threat of bodily injury (based on Morse's alleged threats over the phone), breach of contract, and intentional infliction of emotional distress, and filed a TCPA motion to dismiss. The Harris County trial court transferred the underlying proceedings to Travis County. *See* Tex. Civ. Prac. & Rem. Code § 15.063. After holding a hearing on the TCPA motion to dismiss, the trial court took the matter under advisement and did not render an order, thus the motion was overruled by operation of law. *See id.* § 27.008(a). Carpenter timely filed this interlocutory appeal. *See id.* § 51.014(a)(12).

## STANDARD OF REVIEW

"The [TCPA] protects citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015). The protection comes in the form of a motion to dismiss a suit that would stifle the defendant's exercise of those rights. *See id.*; *see also Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 363 (Tex. 2023) (providing that TCPA "protects speech on matters of public concern by authorizing courts to conduct an early and expedited review of the legal merit of claims that seek to stifle speech through the imposition of civil liability and damages."). The legislature has instructed that the Act shall be "construed liberally to effectuate its purpose and intent fully." Tex. Civ. Prac. & Rem. Code § 27.011(b).

Courts review a motion to dismiss under the TCPA using a three-step process. *See Montelongo v. Abrea*, 622 S.W.3d 290, 296 (Tex. 2021). First, the movant bears the initial burden to show the TCPA applies because the "legal action" against the movant is "based on or is in

---

[2] Carpenter appealed the order for temporary injunctive relief and The First District Court of Appeals affirmed. *See Carpenter v. Daspit Law Firm, PLLC*, No. 01-22-00282-CV, 2023 WL 3956861 at *1 (Tex. App.—Houston [1st Dist.] June 13, 2023, no pet.) (mem. op.).

4

response to" its "exercise of the right of free speech, right to petition, or right of association." Tex. Civ. Prac. & Rem. Code § 27.003(a). A "legal action" is "a lawsuit, cause of action, [or] petition . . . that requests legal or equitable relief." *Id.* § 27.001(6). If the movant meets its burden to show that the TCPA applies, the burden then shifts to the claimant to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). If the claimant meets that burden, the court must still grant the motion if the movant "establishes an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." *Id.* § 27.005(d). Whether each party met its respective burdens under the TCPA is reviewed de novo. *O'Rourke v. Warren*, 673 S.W.3d 671, 679–80 (Tex. App.—Austin 2023, pet. denied). In determining "whether a legal action is subject to or should be dismissed under this chapter," we may "consider the pleadings, evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based." Tex. Civ. Prac. & Rem. Code § 27.006(a). We review the pleadings and evidence in the light most favorable to the nonmovant. *O'Rourke*, 673 S.W.3d at 680.

In one issue that we have divided into various subparts, Carpenter argues the court erred in denying his TCPA motion to dismiss because (1) DLF's suit impinges upon Carpenter's rights of free speech and association, (2) the commercial-speech exemption does not apply to Carpenter's communications, and (3) DLF has failed to establish a prima facie case for each cause of action. We discuss each issue in turn.

*Whether the TCPA applies*

As the first step in the three-party inquiry, we must determine whether Carpenter met his burden to show that the TCPA applies to DLF's suit. [3] Carpenter argues that DLF's suit impinges upon Carpenter's right to free speech and association, and that it impinges upon Carpenter's clients' rights to counsel of their choice and their rights to petition.

The TCPA defines both the exercise of the right of association and the exercise of the right of free speech with reference to the making of a "communication," *see* Tex. Civ. Prac. & Rem. Code § 27.001(2), (3), which term "includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *See id.* § 27.001(1). The TCPA defines the "exercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests" and the "exercise of the right of free speech" as "a communication made in connection with a matter of public concern." *Id.* § 27.001(2), (3). A matter of public concern "means a statement or activity regarding a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity; a matter of political, social, or other interest to the community; or a subject of concern to the public." *Id.* § 27.001(7).

This Court has previously held that alleged trade-secret disclosures may fit within the TCPA's definition of right of association. *See Elite Auto Body LLC v. Autocraft Bodywerks, Inc.*, 520 S.W.3d 191, 204–06 (Tex. App.—Austin 2017, pet. dism'd). In *Elite Auto Body*, the

---

[3] We recognize that the TCPA was subsequently amended after this appeal was filed. *See* Act of May 19, 2023, 88th Leg., R.S., ch. 804, § 1, 2023 Tex. Sess. Law Serv. 2535, 2536 (to be codified at Tex. Civ. Prac. & Rem. Code § 27.010(a)). The prior version, however, governs cases filed before September 1, 2023. *See id.* §§ 2, 3. Because this case was filed before September 1, 2023, all citations in this memorandum opinion to the TCPA are to the prior version.

plaintiff alleged that its former employees had founded or joined a competing company and furnished the new company with its confidential trade secrets. *See id.* at 194. The outgoing employees engaged in "communications" with the remaining employees in an attempt to lure them to join their new company. *See id.* In answering whether the TCPA applied to the plaintiff's suit, we held that these allegations met the TCPA's definition of a communication between individuals who join together to pursue common interests and that the lawsuit, therefore, related to the defendants' exercise of the right of association. *See id.* at 205–06.

Similarly, here, DLF's suit alleges that Carpenter communicated with his select clients about his departure and recommended that they maintain Carpenter's legal services without DLF. And in four instances, the clients agreed to have Carpenter represent them in their respective ongoing lawsuits. Therefore, we conclude that these communications were between individuals that joined together to pursue common interests and that this conduct fits within the broad definition of a TCPA "communication." *See* Tex. Civ. Prac. & Rem. Code § 27.001(1). We therefore sustain Carpenter's first issue and conclude that the TCPA applies to DLF's suit absent the application of an exemption, which issue we discuss below.[4]

***Whether the commercial-speech exemption applies***

DLF argues that Carpenter's communications and conduct are not protected by the TCPA because the commercial-speech exemption applies.[5] We agree.

---

[4] Because of our determination that the TCPA applies to DLF's suit relating to Carpenter's exercise of the right of association, we need not consider whether the lawsuit alternatively relates to Carpenter's exercise of the right of free speech. *See* Tex. R. App. P. 47.1. Similarly, we need not consider whether Carpenter's clients' rights to petition were implicated. *See id.*

[5] DLF views its claims as against Carpenter as divided between "communication-based" claims (the tortious interference claim and the portions of breach of fiduciary duty that address Carpenter's solicitation of DLF's clients after DLF terminated Carpenter) and "data-based" claims (conversion, theft, and breach of contract claims, and portions of the breach of fiduciary duty claim

A party can avoid the TCPA's burden-shifting requirements by establishing that one of the statutory exemptions applies. *See* Tex. Civ. Prac. & Rem. Code § 27.010; *Staff Care, Inc. v. Eskridge Enters., LLC*, No. 05-18-00732-CV, 2019 WL 2121116, at *7 (Tex. App.—Dallas May 15, 2019, no pet.) (mem. op.) (citing *Santellana v. CentiMark Corp.*, No. 01-18-00632-CV, 2019 WL 1442228, at *3 (Tex. App.—Houston [1st Dist.] Apr. 2, 2019, no pet.) (mem. op.)). When an exemption is invoked, the trial court must consider its applicability after the movant meets its initial burden under the first step of the dismissal process. *See Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018) (per curiam). If an action is exempt, the TCPA does not apply and cannot be used to dismiss the action. *See id.*; *see also* Tex. Civ. Prac. & Rem. Code § 27.010; *State ex rel. Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018).

The commercial-speech exemption provides that the TCPA does not apply to "a legal action brought against a person primarily engaged in the business of selling or leasing goods or services if the statement or conduct arises out of the sale or lease of goods, services, . . . or a commercial transaction in which the intended audience is an actual or potential buyer or customer."

---

that address Carpenter's unauthorized taking and/or retention of confidential and proprietary data and documents belonging DLF). DLF appears to concede that the communication-based claims implicate the TCPA but argues that the data-based claims do not. We find it unnecessary to bifurcate the claims into these categories because they both stem from the same conduct and thus we dispose of them together. *See Robert B. James, DDS, Inc. v. Elkins*, 553 S.W.3d 596, 605 (Tex. App.—San Antonio 2018, pet. denied) (stating that courts of appeals have construed phrase "arising out of" in TCPA's commercial-speech exemption broadly to include statements and conduct that are "ancillary to" commercial transaction); *see also Callison v. C&C Pers., LLC*, No. 09-19-00014-CV, 2019 WL 3022548, at *5 (Tex. App.—Beaumont July 11, 2019, pet. denied) (mem. op.) (providing that defendant's use or disclosure of confidential and proprietary information in wrongful use of trade secrets case qualified as communication under "wide net" of TCPA); *see also HydroChem LLC v. Evoqua Water Techs., LLC*, 650 S.W.3d 6, 9 (Tex. App.—Houston [1st Dist.] 2020, pet. denied) (noting that commercial speech exemption can be based on communications or conduct).

Tex. Civ. Prac. & Rem. Code § 27.010(a)(2). The Texas Supreme Court has construed the exemption to apply when:

> (1) The defendant (TCPA movant) was primarily engaged in the business of selling or leasing goods [or services],
>
> (2) The defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services,
>
> (3) The statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides, and
>
> (4) The intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides.

See Castleman, 546 S.W.3d at 688. "The burden to establish the commercial-speech exemption is on the party relying on it." Grant v. Pivot Tech. Sols., Ltd., 556 S.W.3d 865, 887 (Tex. App.—Austin 2018, pet. denied). We consider the pleadings and record evidence to determine whether a party has met its burden on the exemption's elements. See Rose v. Scientific Mach. & Welding, Inc., No. 03-18-00721-CV, 2019 WL 2588512, at *4 (Tex. App.—Austin June 25, 2019, no pet.) (mem. op.). Factual allegations in a plaintiff's petition alone may be sufficient to meet the exemption's elements. See id. We now discuss whether DLF has met its burden in proving each element of the commercial-speech exemption.

### 1. Whether Carpenter was primarily engaged in the business of selling legal services

The pleadings and record evidence show that Carpenter was hired by DLF to work as a licensed attorney representing clients in lawsuits. It is undisputed that, after DLF terminated Carpenter, Carpenter decided to open his own law practice. When reaching out to his clients at DLF to notify them of his departure, he informed them of his plan and offered his legal services.

9

Thus, we conclude that Carpenter was primarily engaged in the business of selling legal services and that DLF has met its burden on the first element.

2. *Whether Carpenter made the communications in his capacity as a seller of those legal services*

Carpenter admits that he engaged certain clients because he viewed them as prospective customers of his new law firm. He informed them of his desire to start a new firm and specifically offered to continue to represent them in his new, solo capacity. We therefore conclude that Carpenter made the communications in his capacity as a seller of legal services and that DLF has met its burden on the second element.

3. *Whether Carpenter's communications arose from a commercial transaction involving the kind of services that Carpenter provided*

DLF argues that Carpenter's communications were part of his business plan to target DLF's existing clients and induce them to terminate DLF and sign new contracts with Carpenter and that these facts satisfy the third element of the *Castleman* test. Carpenter responds that his communications to DLF clients were not for the purpose of inducing them to terminate DLF; instead, he claims he was merely informing the clients that he had left DLF and that he was offering to continue representing them.

We find Carpenter's arguments unavailing. First, Carpenter admits that he engaged the clients because he viewed them as prospective customers of his new law firm. He states in his affidavit: "When I recovered from the shock of being terminated, I started planning to open my new law office . . . [p]art of my plan included contacting select clients I represented with [DLF], informing them that I had left and offering to continue representing them." His intent behind his actions is further evidenced by the fact that he told the prospective clients that he would cover any expense or fee interest still owed to DLF out of money he expected as a contingent fee.

10

Second, as DLF importantly notes, Carpenter's affidavit did not state that he contacted each client he formerly represented at DLF to inform him of his departure; instead, he contacted only *select* clients that he wished to represent in the future. Thus, contrary to his argument on appeal, Carpenter's own admissions reveal that he was doing more than simply carrying out his ethical duties to inform clients of his departure.

These facts together show that Carpenter's communications with the select clients comprised a commercial transaction involving the kind of services that Carpenter provided. *See Callison*, 2019 WL 3022548, at *6 (holding that, in wrongful use of trade secrets case, "[u]tilizing confidential or proprietary information from a previous employer while working for a new employer to target and secure the same customers satisfies [the third *Castleman*] element"); *see also Grant*, 556 S.W.3d at 889 (concluding that commercial-speech exemption applied to plaintiffs' claims of improper solicitation and competition to extent plaintiffs alleged that defendants engaged in communications with actual or potential customers for purpose of securing sales of defendants' goods or services); *Abatecola v. 2 Savages Concrete Pumping, LLC*, No. 14-17-00678-CV, 2018 WL 3118601, at *9 (Tex. App.—Houston [14th Dist.] June 26, 2018, pet. denied) (mem. op.) (concluding that commercial-speech exemption applied to tortious-interference claims based upon defendant's interference with his employer's customers where pleadings and evidence demonstrated that defendant's "alleged communications with customers took place so that [defendant] could sell concrete pumping services for compensation"). Accordingly, we conclude DLF has met its burden in proving the third *Castleman* element.

4. *Whether the intended audience of the statement or conduct were actual or potential customers of Carpenter for the kind of goods or services Carpenter provided*

It is undisputed that the intended audience of Carpenter's communications were individuals with active legal claims who Carpenter sought to represent after his employment with

11

DLF ended. These were Carpenter's potential clients to whom he offered the kind of legal services he provided. We conclude DLF has satisfied the fourth *Castleman* element.

Because we have concluded that the commercial-speech exemption applies to Carpenter's conduct and communications, the TCPA does not apply and thus Carpenter cannot use it to dismiss DLF's suit. *See Castleman*, 546 S.W.3d at 688; *see also* Tex. Civ. Prac. & Rem. Code § 27.010. We overrule Carpenter's second issue.[6]

### CONCLUSION

We affirm the trial court's denial of Carpenter's motion to dismiss pursuant to the TCPA.

_____

Edward Smith, Justice

Before Chief Justice Byrne, Justices Triana and Smith

Affirmed

Filed: August 14, 2024

---

[6] Having concluded the TCPA does not apply, we need not consider Carpenter's third issue regarding whether DLF established by clear and specific evidence each element of its claims. *See* Tex. R. App. P. 47.1.